CATHERINE HARRIS, Administratrix, *vs.* MINNEAPOLIS & ST. LOUIS
RAILWAY COMPANY.

June 15, 1885.

**Railway—Negligence—Accident at Highway-Crossing.**—In an action
for negligently killing plaintiff's intestate, the fact that, while he was
driving on a highway across defendant's track, a train, going at the rate
of 10 miles an hour and making the usual signals, ran upon and killed him,
is not sufficient evidence of negligence to justify a verdict for plaintiff.

Appeal by defendant from an order of the district court for Le
Sueur county, *Macdonald,* J., presiding, refusing a new trial, after a
verdict of $3,500 for plaintiff.

*H. J. Peck,* for appellant.

*Thos. H. Quinn,* for respondent.

GILFILLAN, C. J.   Action for negligently causing the death of plain-
tiff's intestate, Patrick Harris.   In February, 1883, at about half past
6 in the evening, he was driving a span of horses attached to a pair
of bobs along a highway which crosses defendant's track at the vil-
lage of Kilkenny, and as he came upon the track a train consisting of
one engine and two cars, passing from north to south, struck and
killed him.   There was no evidence at the trial to indicate that those
in charge of the train saw Harris in time to stop, or that they knew
or had reason to suppose that any one was about to drive on the track.
The train was at the time going at the rate of about 10 miles an hour,
a very low rate for railway trains,—one that, unless under excep-
tional circumstances, would not be a negligent rate.

An attempt was made by plaintiff to show a failure to give the
usual signals of the train's approach.   A witness, who was within 50
feet of the crossing, testified: "I did not hear any bell, but I heard a
whistle after the train passed the crossing.   I had not heard any
whistle before that;" and on cross-examination: "I was looking to-
wards the crossing, but not before the train got there.   I do not know
where I was when the train was north of the depot, (that was from
160 to 200 feet north of the crossing.)   I was in the house, I suppose.

I do not know where I was when the train was at the whistling-post north of the depot. I did not see the train as it came by the depot. I do not know where I was when the train was one hundred feet north of the crossing. I suppose I was in the house. I simply say I did not hear the bell ring." And being asked, "Did not the whistle blow before it reached the crossing?" he answered: "I was not looking out before that. I will not swear it did not blow before that." It not appearing that he would probably have heard the bell or whistle had they been sounded, his testimony that he did not hear either before the train reached the crossing is of no value whatever, and has no tendency to prove that they were not sounded.

On the other hand, a witness for defendant testified positively that the whistle was blown for the regular station whistle, (which he said is of five seconds' duration,) at the whistling-post 80 rods north from the depot, and the bell was rung while the train was passing the depot. That the whistle was sounded and the bell rung when approaching the crossing must be taken as facts. Negligence cannot be inferred from the fact of the killing. That the train approached the crossing at the rate of 10 miles an hour, giving the usual signals, is not, there being no other circumstances, evidence of negligence that will sustain a verdict. If it were, railroad companies could not run their trains with impunity without bringing them to a full stop at every crossing.

Three tracks of defendant crossed the highway at this place, there being an interval between each two tracks of seven or eight feet. In clearing the snow from the tracks the defendant's servants threw it upon the highway in these intervals, raising the surface in them ten or twelve inches above the surface between the rails of the tracks. If this made the highway worse for travel than it otherwise would have been, it was a wrong. But no connection is shown between that condition of the highway and the accident. There is nothing from which a reasonable inference may be drawn that it either brought deceased on the track sooner that he otherwise would have got there, or that it prevented him getting off as quickly as he would otherwise have got off. So far as there is any evidence on the point, it tends to show utter absence of care or effort on his part to avoid or escape from the

calamity that befell him. Whether that evidence is sufficient to require a finding that it was brought on him by his own negligence, it is unnecessary now to determine, as the verdict must be set aside on the ground that there is no evidence that the accident was due to negligence of defendant.

Order reversed.