Keim v. Union Railway & Transit Company.

KEIM v. UNION RAILWAY AND TRANSIT COMPANY, *Appellant.*

1.  **Practice in Supreme Court:** OBJECTIONS TO EVIDENCE. Objections made to evidence which are of a general character, not stating any grounds on which they are based, will not be regarded on appeal.

2.  **Negligence:** RAILROAD: STREET CROSSING: QUESTION FOR JURY. In an action against a railroad company for its negligence in running its locomotive over and killing plaintiff's husband, where the evidence tends to show that the accident occurred at a public crossing on the defendant's track in the city of St. Louis on a dark and foggy morning; that the train which struck the deceased was being run at twelve miles an hour without its bell being constantly rung, in violation of an ordinance, which the defendant had accepted, forbidding it from running its engine at a greater rate of speed than six miles an hour, and where the evidence of the conductor further tends to show that the deceased was run over and killed instantaneously with stepping on the track, and that the engine was not reversed until after it had passed over him; there was sufficient evidence to warrant the submission of the question of negligence to the jury, and the verdict will not be disturbed as being against the weight of the evidence.

3.  ——: ——: ——. The jury from the above facts may well have reached the conclusion that if the train had been run at six instead of twelve miles an hour and the engine reversed the accident would not have occurred.

4.  ——: ——: ——. The rate of speed at which the train was running in violation of the ordinance was negligence *per se.*

5.  **Contributory Negligence:** WHEN NOT QUESTION OF LAW. The deceased was not guilty, under the circumstances of this case, of such contributory negligence as to authorize the court to declare as a matter of law that there could be no recovery.

6.  **Negligence:** INSTRUCTIONS. An instruction, which, referring to the time immediately before the accident occurred, authorizes a recovery, if the jury find that after the dangerous condition of the deceased was discovered, or, by the exercise of ordinary care, would have been discovered, the defendant could have prevented the accident, is proper where the person injured is not a trespasser on the railroad track.

7. ———— : ————. It is no error to refuse instructions asked by the defendant on the question of contributory negligence, where those given by the court of its own motion cover every phase of that defence.

*Appeal from the St. Louis Court of Appeals.*

AFFIRMED.

*S. M. Breckinridge* and *M. F. Watts* for appellant.

(1) The demurrer to the evidence at the close of plaintiff's case should have been sustained. There was no evidence tending to connect, in any way, the death of deceased with any negligence on the part of defendant. *Holman v. Railroad*, 62 Mo. 562 ; *Kelley v. Railroad*, 75 Mo. 142 ; *Powell v. Railroad*, 76 Mo. 83 ; *Lenox v. Railroad*, 76 Mo. 86. (2) There was no evidence to support the verdict. *Henry v. Railroad*, 76 Mo. 282 ; *Powell v. Railroad*, 76 Mo. 83 ; *Pleasants v. Fanta*, 22 Wall. 122 ; *Commissioners v. Clark*, 94 U. S. 284 ; *Kelley v. Railroad*, 11 Mo. App. 1 ; *Drain v. Railroad*, 10 Mo. App. 531 ; *O'Donnell v. Railroad*, 7 Mo. App. 190 ; Thompson on Negligence, secs. 421 and 422 ; *Wilcox v. Railroad*, 39 N. Y. 358 ; *Harty v. Railroad*, 42 N. Y. 469 ; *Wendell v. Railroad*, 91 N. Y. 420 ; *Dodge v. Railroad*, 34 Iowa, 276 ; *Railroad v. McMillan*, 37 Ohio, 534 ; *Railroad v. Shacklett*, 105 Ill. 364 ; *Mahlen v. Railroad*, 49 Mich. 585. (3) The admission, against defendant's objection, of the testimony of Mr. Cozzens, as to statements made to him by Mr. Lenhardt, was error. (4) There was error in the first instruction given by the court of its own motion, in that it left to the jury the finding of a fact not in issue, namely, the failure of defendant to ring the bell of the engine. *Railroad v. Robinson*, 106 Ill. 142 ; Thompson's Charging the Jury, sec. 62. (5) There was error in the

refusal of the court to give the fourth, seventh and thirteenth instructions asked by defendant. (6) The sixth instruction asked by the court of its own motion was erroneous. *Rine v. Railroad,* 3 West. Rep. 800; s. c., 88 Mo. 392.

*Kehr & Tittman* and *G. A. Wurdemann* for respondent.

(1) Running the train in violation of the ordinance was negligence *per se.* Defendant, therefore, was guilty of negligence, both in running the train at an unlawful rate of speed and in not sounding the bell. *Karle v. Railroad,* 55 Mo. 476; *Maher v. Railroad,* 64 Mo. 267; *Bergman v. Railroad,* 88 Mo. 678. (2) Defendant's track ran along Gratiot street, a public thoroughfare, used in common by the community and the railroad company. The deceased, when struck and killed, was in the street in the middle of the foot path crossing the track. Defendant was bound to know that persons might be expected there at all times, and it was its duty to exercise the highest degree of vigilance. *Frick v. Railroad,* 75 Mo. 595–609–611; *Donahoe v. Railroad,* 83 Mo. 555. (3) The deceased was no trespasser. He was on the public street where it was his lawful right to be. The law presumes that he was in the exercise of due care. 73 Mo. 233. The defendant did not even plead contributory negligence. *Buesching v. Gas Light Co.,* 73 Mo. 219; *Flynn v. Railroad,* 78 Mo. 195. (4) The defendant's negligence and the injuries to the deceased being shown, it was competent to infer that the latter was occasioned by the former and the connection between the two was properly left to the jury. *Railroad v. Dunn,* 78 Ill. 197; *Johnson v. Railroad,* 20 N. Y. 65; *Billings v. Breinig,* 45 Mich. 65–71; *Willy v. Mulledy,* 78 N. Y. 310–316; *Williams v. Railroad,* L. R. 9 Exch. 157; *Moore v. Railroad,* 73 Mo. 438; *Wil-*

liams v. Railroad, 74 Mo. 453 ; Goodwin v. Railroad, 75 Mo. 76 ; Persinger v. Railroad, 82 Mo. 196–199 ; Braxton v. Railroad, 77 Mo. 458. (5) Contributory negligence is a matter of defence, and to be available to defendant should have been pleaded, which was not done. Buesching v. Gas Light Co., 73 Mo. 219 ; Stephens v. City of Macon, 83 Mo. 345. (6) The case was properly tried on the theory that defendant was liable if it either knew, or might, by the exercise of ordinary diligence, have known of the dangerous position of the deceased on the track in time to prevent the accident. Bergman v. Railroad, 88 Mo. 678 ; Kelly v. Railroad, 75 Mo. 138 ; Werner v. Railroad, 81 Mo. 368 ; Scoville v. Railroad, 81 Mo. 434 ; Welsh v. Railroad, 81 Mo. 466. (7) The court cannot examine what purports to be the bill of exceptions in this cause, because the same was not signed until the third term after the rendition of the judgment. Givens v. Van Studdiford, 13 Mo. App. 168. (8) Although defendant, at the close of the plaintiff's case, offered the usual instruction of non-suit, it waived the point by going on with the case, and the only permissible inquiry now is, whether there was any evidence at all to sustain the verdict. Goodger v. Finn, 10 Mo. App. 226 ; Bolt & Iron Company v. Buell, 8 Mo. App. 594.

NORTON, J.—This is an action in which plaintiff seeks to recover damages for the alleged negligence of defendant in running its locomotive and cars over her husband, George Keim, and killing him. The answer of defendant is a general denial. On the trial plaintiff obtained judgment, which was affirmed by the St. Louis court of appeals, and the case is before us on defendant's appeal, and we are asked to reverse the judgment for alleged error of the trial court in receiving evidence and in giving and refusing instructions.

As defendant's objections to the evidence offered

and received were of a general character, without stating any ground whatever on which they were based, the question as to whether it was, or not, properly received, under repeated rulings of this court, is not before us for determination.   35 Mo. 226; 33 Mo. 230 ; 23 Mo. 438.

It is next insisted that there is no evidence justifying the court in submitting the case to the jury and none to support their verdict.   This objection necessitates a review of the evidence, which, on the part of plaintiff, tended to show that deceased was a butcher by trade, and lived with his family in St. Louis on Thomas and Cooper streets, where he had his shop, and that he also occupied a stall at Lucas Market on Twelfth and Pine streets, where he sold his meat ; that he had been engaged in this business for several 'years, going from his home in the early morning to the market every day except Sunday ; that on the twenty-eighth of September, 1878, he left his home soon after four o'clock in the morning to go to the market, and went east on Gratiot street, when, about 4:30 o'clock, he was struck and killed, on the path in Gratiot street crossing defendant's track, by a train of defendant coming west, which was running at the rate of twelve miles an hour, and, according to defendant's evidence, without its bell being rung at the time of, and immediately before, the collision took place ; that several railroad tracks crossed said Gratiot street diagonally ; that between and across them there were foot paths used by persons in passing along and across said street and railroad tracks ; that Gratiot street was laid out as early as 1846, and had been continuously used by the public ; that in 1876, the city of St. Louis, by ordinance which defendant accepted, gave it permission to extend its tracks from Tayon avenue to the western city limits, and to cross, among other streets, Gratiot street ; that the said ordinance, among other things, provided that defendant should not

run its trains over the tracks therein mentioned at a rate of speed exceeding six miles an hour, and that the bell on its engine should be constantly sounded while a train was moving within the city ; that the lines of Gratiot street when first laid out were well marked with fences, and subsequently by buildings ; that the railroad tracks were laid on the natural surface of the ground, and so remained till 1880 ; that before defendant laid its tracks the entire north side of the street had been lined with houses, and several buildings were also on the south side.     The only persons who saw the accident were the conductor and engineer in charge of the train, which consisted of an engine, tender and seven cars, both of whom were introduced as witnesses by the defendant. The conductor testified that it occurred on a dark, gloomy foggy morning ; that the headlight in the engine was burning ; that he was sitting in front of the engine, with a lamp in his hand, looking ahead ; that, in conse- quence of the fog and mist, the headlight only cast a circle of light fifteen or twenty feet ahead of it.

He further testified, among other things, as follows : " After I crossed High street I noticed a man come sud- denly on the track.     I hallooed to him to get out of the road, to get off the track ; instead of making an effort to get off, he threw up his arms and let himself fall right immediately in front of the engine southward across the track with his right arm across the rail.     I gave the signal to the engineer to stop, with my lamp.     Held my lamp out when I saw the man made no effort to get off, gave the signal ; we had already run over him with the engine and I gave the signal to stop, and said we have run over a man, and he put on his air brake and reversed his engine, and I got out and found we had run over the man with the engine, tender and one car."     He further testified that when he first saw deceased he was fifteen or twenty feet ahead of the engine, " that he had no hat on, had one arm on his coat, the coat was either hanging

around his neck, or one arm of it on, that he thought the man was loony or crazy, that his eyes were staring wide open, and his hair stood up on top of his head like he was frightened." In answer to the question what he said about the engineer stopping the train on his signal, he replied: "After I stepped off the engine and gave the engineer the signal, with my lamp, to hold on, that we had run over a man, he applied his air brake." He was then asked: "When you hallooed and threw up your lamp?" to which he answered: "He did not understand distinctly that we had run over a man. He put on his air brakes and tried to stop, but did not use the same exertion as he did when I told him that we had run over a man." He was then asked what he meant by putting on the air and answered: "There were air brakes on the engine, and by putting on the air it checked the train up very suddenly. He done that, and afterwards when I told him again, he turned the engine and gave it steam." He further testified that deceased was dragged about twenty yards after being struck, and that he was struck before Gratiot street crossing was reached.

The fact that the train was running at a greater rate of speed than six miles an hour was neither denied by the conductor nor engineer, both of whom testified that they could not avoid running over deceased after he was discovered on the track. The engineer testified that he was at his place on the engine looking ahead, and that as soon as he saw the man on the track and received the signal, he applied the air brake and reversed the engine, and made similar statements as to the appearance of deceased to those made by the conductor. On being asked if a man on the track, one hundred feet ahead of the train, were paying attention, could he hear it under the circumstances existing that morning, replied: "Well, about the bell being rung, I don't think he could hear it without the bell being rung; that the bell, if rung,

could be heard much farther than that ; could be heard for ten blocks.'' Under the state of facts disclosed by this evidence we do not feel authorized to say that there is no evidence of negligence on the part of defendant which contributed directly to the killing of deceased. The evidence tends to show that the train was being run at twelve miles per hour, without its bell being constantly rung, in violation of an ordinance, which defendant had accepted, forbidding it from running its engine at a greater rate of speed than six miles an hour, and the evidence of the conductor further tends to show that deceased was run over and killed instantaneously with stepping on the track, and the engine was not reversed till after it passed over him. In view of these facts, the jury may well have reached the conclusion, that if the train had been run at six instead of twelve miles per hour, and the engine reversed, the accident would not have occurred. The rate of speed at which the train was running, in violation of the ordinance, was negligence *per se. Karle v. Railroad,* 55 Mo. 476 ; *Maher v. Railroad,* 64 Mo. 267 ; *Bergman v. Railroad,* 88 Mo. 678 ; see, also, *Johnson v. Railroad,* 20 N. Y. 65, and *Railroad v. Dunn,* 78 Ill. 197.

Nor do we feel authorized, as a matter of law, under the circumstances of this case, to say that deceased was guilty of such contributory negligence as denied plaintiff's right to recover. The evidence tended to show that deceased, as was his custom, left his home a few minutes before the accident occurred, to go to his place of business, pursuing the customary route; that the morning was dark and foggy; that there were a number of railroad tracks crossing Gratiot street and a number of foot paths between and across these tracks used by the public ; that deceased was killed on one of these paths in Gratiot street which crossed defendant's track ; that immediately before the collision the fireman had ceased

to ring the bell, and was engaged in pouring oil in the valves of the engine ; that owing to the misty and foggy character of the morning the headlight would impart but little if any information as to the track that the engine was on, or the distance from the crossing, as it only cast a circle of light fifteen or twenty feet ahead of it ; in view of these facts and the further fact that deceased did not receive the warning from the bell, which it was the duty of the defendant to give, and which it had agreed to give by accepting the ordinance, and not anticipating that the train was running at an illegal rate of speed, the question as to whether deceased was guilty of contributory negligence in pursuing his way across the track, was for the jury under proper instructions, and they might well have found that the act of deceased in going on the track, under the circumstances, was not negligence, unless they accepted as true the improbable theory advanced in the evidence of the conductor and engineer, that deceased stepped on the track for the purpose of throwing himself down in front of the engine to be run over and killed ; a theory which would tax the credulity of a jury to believe, especially so, in view of the fact testified to by both of them, that deceased was so frightened that his eyes stared out, and his hair stood up on his head, which would scarcely have been the case had he resolved on that method of suicide. It is a far more probable theory, from this testimony, that the deceased, alarmed and terrified by his surroundings and the suddenness of the peril he found himself in, in his efforts to escape it, tripped or stumbled and fell, and was run over before he could recover from his fall, which, in all probability, he might have done but for the negligence of defendant in running its engine at twelve instead of six miles an hour.

The case of *Holman v. Railroad*, 62 Mo. 562, to which we have been cited, as establishing the rule, that when the negligence of the company is shown, in not

ringing its bell, or sounding its whistle, and stock is run over and killed, at a public crossing, that no inference can be drawn from such negligence that the injury was occasioned by it, has been shaken and virtually overruled by the cases of *Persinger v. Railroad*, 82 Mo. 197; *Turner v. Railroad*, 78 Mo. 578; *Kendrick v. Railroad*, 81 Mo. 521; *Edwards v. Railroad*, 76 Mo. 399. The case of *Kelly v. Railroad*, 75 Mo. 138, to which we have also been cited, is distinguishable from this case, in two important particulars. What occurred there was not in the night, as in this case, when the vision was obscured, not only by darkness, but by heavy mist and fog, but in the broad, open day, with positive evidence that the injured person was unmindful of his surroundings; and, in the further particular, that the instruction of the court did not require the jury to find, that the failure of defendant to ring its bell, and running the train at an unlawful rate of speed, occasioned the injury.

It is next objected, that the first instruction, given for plaintiff, is erroneous, in that it submits a question to the jury, on which there was no evidence, viz: the failure of defendant to ring the bell on the engine. We have adverted to the evidence on that subject in the foregoing part of this opinion, and it is unnecessary to advert to it again, except to say, that it was sufficient to justify the reference of the question to the jury.

It is also objected, that the court erred in refusing the fourth, thirteenth and fourteenth instructions, asked by the defendant, which relate to contributory negligence. It is sufficient to say of this objection, that the court, of its own motion, gave seven instructions, covering every possible phase of contributory negligence, and the instructions were properly refused, for that, if for no other reason. An objection is also made to the sixth instruction, given by the court, of its own motion, which contains the following language: "If the jury find

that, after his dangerous condition was discovered, [or, by the exercise of ordinary care, would have been discovered, etc.]" This instruction is objected to, because of the use of the words included in brackets. The use of these words was fully justified by the case of *Kelly v. Railroad*, 75 Mo. 138, and the cases there cited, and the more recent case of *Donahue v. Railroad*, decided at this term.

We have been cited to the case of *Rine v. Railroad* 88 Mo. 392, as asserting a different rule. This is a misconception, for it, in terms, recognizes the rule laid down in the case of *Kelly v. Railroad, supra*, and in all that class of cases where the injured person is not a trespasser on the track. The instructions put the case in the strongest and most favorable light for defendant, and the judgment of the court of appeals, affirming that of the circuit court, is hereby affirmed.

All concur, except Sherwood, J., absent, and Henry, C. J., who dissents.