CATHERINE HARRIS, Administratrix, vs. MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY.

May 28, 1887.

Contributory Negligence—Railroad Crossing.—Evidence considered as showing that the deceased (for whose killing by a locomotive at a railway crossing this action is brought) drove upon the crossing without being watchful to discover whether a train was approaching. Such negligence contributing to produce the accident, a recovery cannot be sustained.

Appeal by defendant from an order of the district court for Le Sueur county, *Macdonald, J.*, presiding, refusing a new trial after a verdict of $3,000 for plaintiff.

*H. J. Peck*, for appellant.

*Thos. H. Quinn*, for respondent.

DICKINSON, J. Upon a former appeal in this action, a new trial was granted, for the reason that the case did not show negligence on the part of the defendant which could be said to have caused the accident complained of. The case is reported in 33 Minn. 459, (23 N. W. Rep. 850.) The cause is now here upon the case shown at the second trial.

Upon a consideration of this case, we are of the opinion that, as respects the question of negligence of the defendant, there was suffi-

cient evidence to sustain the verdict of the jury, if that were the only question in the case. We shall not, in this connection, refer to that evidence, as the decision must turn, as we think, upon the question of the contributory negligence of the deceased.

The accident occurred at a crossing of a public road over the defendant's track, in the village of Kilkenny. The railroad here runs north and south, in a straight line, the highway crossing it on an east and west line. The view of the track to the northward, as one approached the crossing from the west, would be obstructed by a large pile of ties north of the highway, and west of the railroad, so that he could not see an approaching train. These ties extended to within perhaps eight feet of the railroad track. The deceased crossed the track at this place very often, and must have been perfectly familiar with the situation. The accident occurred between 6 and 7 o'clock in the evening in the latter part of February, it having become pretty dark. It was snowing, and a westerly wind was blowing pretty hard. The train coming from the north was an irregular or "wild" train, consisting of engine, box car, and caboose. It approached the crossing at a speed differently estimated by two different witnesses at 10 or 12 and 20 or 25 miles an hour. We shall assume that no whistle was blown or bell rung. The head-light of the engine was burning. The deceased came along the highway from the west, driving a span of horses attached to an empty wood rack on sleighs. The conduct of his horses makes it apparent that they were not afraid of the cars, and that they might have been safely stopped in the face of the train. The deceased was sitting on the forward part of his sleighs. He drove at an ordinary steady walk as he approached the crossing. Just as his horses were about to cross the track, a man standing about 45 feet beyond the track shouted to him to warn him of the danger. The deceased in no way evinced any notice or appreciation of the danger, except by striking his horses with a whip or stick as they went on the track. The horses continued at a slow walk, which was even retarded a little as they crossed the track, by reason, probably, of the unequal surface caused by throwing snow out from the track, which had formed mounds a foot high on either side of the main or west track, and between that track and the side tracks east of it.

The sleighs were nearly over when the engine reached the crossing, but it struck the hind sleigh, and Harris was killed.

In our judgment, the conduct of the deceased, and the occurrence of the accident under these circumstances, are so indicative of negligence on his part that a contrary conclusion can only be based upon conjectures and possible facts not shown in the case. It seems apparent that Harris could not have been watchful to learn if a train were approaching without becoming aware of the fact before his horses stepped upon the track. It does not distinctly appear at what distance from the crossing he would have any extended view of the railroad track. This would depend somewhat upon the distance between himself and the intervening obstruction. But, even if he could neither have seen nor heard the train until his horses were actually upon the crossing, there is no circumstance shown which makes it reasonable to suppose that, if he had been watchful, he could have failed to see the reflection of the head-light of the engine before he came to the crossing. His conduct, and the undisputed circumstances of the case, justify no other conclusion than that he approached the crossing regardless of possible danger, and without exercising his faculties to discover it. For this reason we are satisfied that the verdict cannot be sustained.

Order reversed.