GRATIOT v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

In Banc, June 6, 1893.

1. **Railroad:** ORDINANCE: NEGLIGENCE. Running a railway train within a city at a rate of speed in excess of that prescribed by ordinance is negligence *per se.*

2. ——: ——: INJURY ON CROSSING: CONTRIBUTORY NEGLIGENCE. A traveler injured in attempting to pass over a public crossing by an approaching train by reason of its failure to observe the ordinance limiting the rate of speed, or by reason of the failure to constantly sound the bell within the city limits is entitled to recover, if not guilty of negligence directly contributing to the injury.

Gratiot v. The Mo. Pac. R'y Co.

3. ———: SIGNALS. The failure to ring the bell is negligence *per se.*

4. ———: INJURY ON CROSSING: CONTRIBUTORY NEGLIGENCE. Although one approaching a railroad crossing observed a train and notwithstanding attempted to pass over, yet if he erroneously supposed it was a local switch engine and not an express train then about due and if he was ignorant of the fact that the express train was usually run at a rate of speed prohibited by ordinance, he had the right to assume that it was running at a lawful speed and, if such had been the fact, he could have passed over the crossing in safety before the train could have struck him, he was not guilty of such contributory negligence as to authorize the taking of the case from the jury.

5. ———: ———: PRESUMPTION. One approaching a railroad public crossing may presume that those in charge of a coming train will observe an ordinance in force regulating its speed.

6. NEGLIGENCE: QUESTION FOR JURY. Negligence is always a question for the jury where the evidence thereon is conflicting or where, the facts being undisputed, reasonable men will draw different inferences therefrom.

7. City: POLICE REGULATION: SPEED OF TRAINS. A city may, as a matter of police regulation, restrict by ordinance the speed of trains within its limits.

8. ———: ———: ———. An ordinance limiting the speed of such trains to six miles an hour is both reasonable and humane.

9. Railroad: PERSONAL INJURIES: DAMAGES: VERDICT. In an action by one injured on a railway crossing by a passing train, it appeared that he was a physician sixty years of age and earned about $2,500 a year, that his nose and three ribs were broken and his spine and hip were injured, that some of his teeth were broken and knocked out and that he is permanently paralyzed on one side of his face and that he is an invalid for life, so that his earnings are much reduced. *Held* that a verdict for $10,175 will not be disturbed by the supreme court because excessive.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*B. Pike* for appellant.

(1) Defendant's instruction at the close of the whole case in the nature of a demurrer to the evidence,

should have been given. *Zimmerman v. Railroad*, 71 Mo. 490; *Yarnall v. Railroad*, 75 Mo. 583; *Moody v. Railroad*, 68 Mo. 470; *Abbett v. Railroad*, 30 Minn. 482; *Rogstad v. Railroad*, 14 American and English Railroad Cases, 649; *Bell v. Railroad*, 72 Mo. 50; *Reading v. Railroad*, 19 American and English Railroad Cases, 276; *Matti v. Railroad*, 32 American and English Railroad Cases, 73; *Hixon v. Railroad*, 80 Mo. 336; *Turner v. Railroad*, 74 Mo. 602; *Purl v. Railroad*, 72 Mo. 168; *Neier v. Railroad*, 12 Mo. 25; *Kelly v. Railroad*, 75 Mo. 138; *Tully v. Railroad*, 14 American and English Railroad Cases, 682. (2) The refusal of defendant's instructions was erroneous. See cases cited under first point, and *Devitt v. Railroad*, 50 Mo. p. 304: *Zimmerman v. Railroad*, 71 Mo. 490; *Yarnall v. Railroad*, 75 Mo. 583; *Price v. Railroad*, 72 Mo. 414. (3) The court committed error in the giving of the instructions on his own motion. See cases cited under second point, and *Waldhier v. Railroad*, 71 Mo. p. 515; *Gurley v. Railroad*, 93 Mo. 450; *Kersey v. Railroad*, 79 Mo. 364; *Current v. Railroad*, 86 Mo. 66; *Harris v. Railroad*, 37 Mo. 308; *Price v. Railroad*, 72 Mo. 416; *Cary v. Railroad*, 60 Mo. 213. (4) The verdict was grossly excessive and manifestly the result of prejudice, passion and a perversion of judgment or of a misconception of duty. *Sawyer v. Railroad*, 37 Mo. 240, and cases cited therein.

*H. S. Priest*, also for appellant, on motion for rehearing.

The opinion of the court, upon the question of respondent's contributory negligence, is in conflict with the following controlling and ably considered authorities: *Railroad v. Webb*, 8 Southern Rep. 518; *Railroad v. Houston*, 95 U. S. 697; *Schofield v. Railroad*,

114 U. S. 615; *Railroad v. Hobbs* (Md. 1884), 19 American and English Railroad Cases, 337; *Mynning v. Railroad*, 28 American and English Railroad Cases, (Mich. 1887), 667; *Harris v. Railroad,* 33 N. W. Rep. (Minn. 1887), 12; *Brown v. Railroad,* 22 Minn. 165; *Railroad v. Mali,* 25 American and English Railroad Cases (Md. 1886), 628; *State v. Railroad* 58 Md. 428; *Hixson v. Railroad,* 80 Mo. 382; *Zimmerman v. Railroad,* 71 Mo. 476; *Turner v. Railroad,* 74 Mo. 603; *Kelly v. Railroad,* 75 Mo. 138; *Powell v. Railroad,* 76 Mo. 80; *Abbett v. Railroad,* 30 Minn. 482; *Haus v. Railroad,* 47 Mich. 401; *Kelly v. Railroad,* 8 Atl. Rep. (Pa.) 856; *Merkle v. Railroad,* 49 N. J. 473; *Fox v. Railroad,* 85 Mo. 679; *Railroad v. Richards,* 59 Texas, 373; *Company v. Movell,* 40 Ohio St. 338; *Rogstad v. Railroad,* 31 Minn. 208; *Yancy v. Railroad,* 93 Mo. 432; *Butts v. Railroad,* 98 Mo. 272. (2) The court erred in holding that an honest mistake is not negligence; it is the very essence of negligence. It is an inadvertent disregard of duty followed by an injury that gives a cause of action for what in law is pronounced negligence. In *Isbell v. Railroad,* 60 Mo. 475, the engineer saw what he honestly took to be a dog on the track; it was a child. His "honest mistake" did not relieve the railroad company. See also *Warner v. Railroad,* 81 Mo. 368; *Pure v. Railroad,* 72 Mo. 171; 4 American and English Encyclopedia of Law, p. 72. The case of *Bonnell v. Railroad,* 39 N. J. Law, 185, is an exceptional one and not at all applicable to the facts of this case. (3) It has been the constant practice of courts to declare ordinances void that are unreasonable, and that question was not a matter solely for the municipal assembly. *Corrigan v. Gage,* 68 Mo. 541; *Meyers v. Railroad,* 57 Mo. 555; *St. Louis v. Weber,* 44 Mo. 547. (4) The court erred in holding in its opinion that the respondent was only entitled to

a general clause in the instruction to the effect that if the collision was the result of the joint negligence of both plaintiff and defendant, then the plaintiff was not entitled to recover. *Railroad v. Mall*, 28 American and English Railroad Cases, 632; *Yarnall v. Railroad*, 75 Mo. 57.

*Davis & Davis, A. R. Taylor* and *J. P. Maginn* for respondent.

(1) Defendant's instructions in the nature of a demurrer to the evidence, at the close of the whole case was properly refused. *Frick v. Railroad*, 75 Mo. 595; *Buesching v. Gas Light Co.*, 73 Mo. 219; *Weber v. Railroad*, 100 Mo. 194; *Tetherow v. Railroad*, 98 Mo. 74; *Kelly v. Railroad*, 70 Mo. 604; *Smith v. Railroad*, 61 Mo. 588; *Meyer v Railroad*, 40 Mo. 151; *Wilkins v. Railroad*, 101 Mo. 95; *Hilz v. Railroad*, 101 Mo. 36, and cases cited therein; *O'Hare v. Railroad*, 95 Mo. 662; *O'Connor v. Railroad*, 94 Mo. 157; *Tabler v. Railroad*, 93 Mo. 79; *Huhn v. Railroad*, 92 Mo. 440; *Keim v. Co.*, 90 Mo. 314. (2) Defendant's instructions refused by the court were properly refused. *Dowell v. Guthrie*, 99 Mo. 653; *Weber v. Railroad*, 100 Mo. 194; *Barry v. Railroad*, 98 Mo. 62; *Tetherow v. Railroad*, 98 Mo. 74; *Brown v. Railroad*, 99 Mo. 310; *Kellny v. Railroad*, 101 Mo. 67; *Jennings v. Railroad*, 99 Mo. 394. *Johnson v. Railroad*, 77 Mo. 546; *Petty v. Railroad*, 88 Mo. 305-319; Beach on Contributory Negligence, p. 459, and other cases cited under first point; *Forrester v. Moore*, 77 Mo. 658; *Mathews v. Grain Elevator*, 59 Mo. 477; *Palmer v. Railroad*, 76 Mo. 217; *Coe v. Griggs*, 76 Mo, 619; *Utley v. Talfree*, 77 Mo. 307. (3) The instructions given by the court of his own motion were without error. See cases cited under second point and *Zimmerman v. Railroad*, 71 Mo. 480; *Frick*

*v. Railroad*, 75 Mo. 597; *Hilz v. Railroad*, 101 Mo. 36; *Rine v. Railroad*, 88 Mo. 399; distinguishing: *Yarnall v. Railroad*, 75 Mo. 583; *Maher v. Railroad*, 64 Mo. 267; *Zimmerman v. Railroad*, 71 Mo. 477; *Kelly v. Co.*, 95 Mo. 279; *Guenther v. Railroad*, 95 Mo. 286; *Johnson v. Railroad*, 77 Mo. 547. (4) The damages were not excessive. *Griffith v. Railroad*, 98 Mo. 168; *Dougherty v. Railroad*, 97 Mo. 647; *Waldhier v. Railroad*, 87 Mo. 49; *Porter v. Railroad*, 71 Mo. 66; *Sheehy v. Railroad*, 94 Mo. 574.

BURGESS, J.—The plaintiff, a physician, aged sixty years, brought this action in the circuit court for the city of St. Louis, to recover damages on account of injuries sustained in a collision with a passenger train on defendant's railway, at a point where it is crossed by a highway commonly known as Campbell's road. The accident occurred within the limits of the City of St. Louis, at a point distant from the union depot a little over five and one half miles. From the union depot along the defendant's railway to the western boundary of the city limits is about eight miles.

By his petition, the respondent relied upon the three following grounds for recovery:

*First.* The failure to ring the bell of the engine eighty rods before reaching the crossing, as required by statute.

*Second.* Moving the train at a speed exceeding six miles per hour, the limitation imposed by ordinance of the City of St. Louis.

*Third.* A failure to constantly sound the bell, as required by ordinance, when trains are moving.

The answer was a general denial, with the plea of contributory negligence on the part of plaintiff.

With respect to the details of the respondent's conduct immediately preceding, and at the time of the casualty, he is the only witness.

The prominent points of reference in the testimony are, "The bridge," Howard's Station, the smelting works, Cheltenham and Campbell's road. From the union depot to Cheltenham it is five and one-fourth miles; Campbell's road crossing is about 150 yards west of Cheltenham; Howard's station is one-half mile east of Cheltenham; the bridge is 200 or 300 yards east of Howard's, and the smelting works are a little west of Howard's, and between Howard's and Cheltenham.

The defendant's railway is a double track between the Union depot and Kirkwood, a suburban town fourteen miles distant, and the trains, both freight and passenger upon it, are frequent in both directions. The north track, regarding it as running east and west, is used by the west bound trains, and the south track by the east bound.

Dr. Gratiot had lived and practiced medicine at Cheltenham for forty-five years, was perfectly familiar with the locality and its surroundings, and with the schedules of time of defendant's trains, and knew from daily observation the rate of speed at which the train that occasioned the injury ran over that part of the road passing through Cheltenham and vicinity.

He was struck by the through express train which leaves the Union depot at 9 o'clock in the morning, and which, he says, was due at Cheltenham at about 9:10; that on the morning he received his injuries, and before venturing a crossing of the railroad track at Campbell's road, at the time he was hurt, he had gone quite up to the crossing, and because he was unadvised whether the express train had passed along, he would not venture over, although he, at that time, saw no evidence of an approaching train from a perfect view of

the tracks in both directions. Instead, however, of crossing at that time, he went to the house of a lady friend for the purpose of ascertaining the exact time of the day, so that he might know positively whether the express train had passed along or not. He ascertained the time, and after waiting a little while, proceeded down to the crossing along the Manchester road, which runs in that vicinity, parallel with and just north of the defendant's railway for a mile and a half, until he got within seven or eight feet of the railroad track, where he stopped, having a perfect view of the tracks in both directions, and especially to the east, for a distance of 1,200 or 1,400 yards—as far as the bridge immediately east of Howard's—raised himself up in his buggy and looked to the east, where he saw an engine facing in his direction. He also heard a whistle, which he took to be a whistle at the bridge for Howard's station. He then immediately resumed his seat, turned his horse to effect a crossing, saw a waver on his glasses, attempted to pull his horse, whose front feet were then nearly on the north rail of the north track, back; was immediately struck and injured.

After seeing the engine, as he supposes, at a distance of 800 or 1,000 yards, and after hearing the whistle, he took no further notice, but immediately attempted a crossing, as he said, supposing that the engine which he saw was a switch engine at the smelting works, and the whistle which he heard was a whistle at the bridge east of the smelting works. He gave no expression of opinion whether the glimpse or the slight view which he had of the engine, supposed by him to be a switch engine at the smelting works, enabled him to judge whether the engine was moving or standing still.

It is conceded that the train by which plaintiff was injured was moving at a speed of thirty-five or

forty miles an hour, though some of the witnesses for the plaintiff gave it as their opinion that the train was moving much faster.

At the close of the plaintiff's evidence, as well as all of the evidence, the defendant prayed instructions in the nature of a demurrer to the evidence, which were refused. It further prayed the following instructions, which the court refused and defendant excepted.

"3. The court instructs the jury that if they believe from the evidence that the plaintiff could have avoided the collision which resulted in his injury, by stopping his horse and buggy to look and listen carefully and constantly for an engine or train, both up and down defendant's track before attempting to drive over the said track, and failed to do so, they must find a verdict for the defendant.

"4. If the jury believe from the evidence in this case that plaintiff attempted to drive his horse and buggy on to defendant's tracks at the crossing on Campbell's road, without first having stopped said horse and buggy to look and listen carefully and constantly, both up and down said track, for an approaching engine and train, and was thereby injured, they must find a verdict for the defendant, even though they find from the evidence that defendants servant's in charge of the engine were also at the same time guilty of negligence.

"5. The court instructs the jury that it was the duty of the plaintiff, at the time and place in question, while he was approaching on Campbell's road to the tracks of defendant's railroad crossing said road, to stop his horse and buggy, and to look and listen carefully and constantly, both up and down said tracks, for an approaching engine or train, before attempting to drive across said tracks, and a failure on his part so to do would constitute in law contributory negligence, which

would preclude a recovery in this action for damages resulting therefrom in whole or in part.

"6.   If the jury find from the evidence that plaintiff, at or about the time mentioned in the petition, to-wit: the twenty-eighth day of October, 1887, was approaching on what is commonly called Campbell's road from the north, a point on said road where the same is crossed by the tracks of defendant, and that, as he came near to said crossing with his horse and buggy, he did not constantly look both ways for an engine or train on defendant's tracks, and was injured in consequence thereof, then he cannot recover in this case; and if the jury further find that on account of the topography of the ground on the north of and near to the tracks of defendant, the view of defendant's tracks east of the point of the accident was and is obstructed, then it was the duty of plaintiff, at the time and place of the accident, as he approached said crossing with his horse and buggy, to use increased care and prudence in attempting to cross the defendant's tracks at said point, and to stop, look and listen, both up and down the tracks, for an approaching engine or train, and not to attempt to cross the said tracks until he had ascertained by looking and listening whether an engine or train was approaching said crossing at the time, and if they find from the evidence that plaintiff failed so to do, and was injured in consequence of such failure, or that his injury was in any degree caused by such failure on his part, then he cannot recover.

"7.   If the jury find from the evidence that plaintiff, in approaching the alleged crossing on Campbell's road with his horse and buggy, at a distance from the tracks of defendant of ten or fifteen feet, looked east along the road and saw an engine thereon at a distance from him of about a thousand yards, which he supposed to be an engine engaged in switching cars at Howard's

station and paid no further attention to ascertain whether such engine was approaching him or the point on defendant's tracks which he was about to cross, and did not look constantly in that direction after seeing said engine, as above stated, or listen for the same, and his horse and buggy were struck by said engine while he was attempting to cross the defendant's tracks at said crossing, and the said horse and buggy were damaged and himself injured in consequence of such collision, then plaintiff cannot recover in this action.''

The court then gave, at its own motion, the following instructions:

"1. It appears from the undisputed evidence in this case that at the time of the collision in question the defendant's train was running at a greater rate of speed than six miles an hour, and that it was within the limits of the city of St. Louis, not on a track along the river bank between Arsenal street and Elwood street; and you are instructed that the act of running its train at a greater rate of speed than six miles an hour within the limits aforesaid, was an act of negligence on the part of defendant.

"2. It was the duty of defendant's servants in charge of the engine and cars, while running or moving within the limits of said city, to cause the bell on the engine to be constantly sounded; and if you believe from the evidence that the bell on the engine of the train in question was not constantly sounded while said train was running or moving within said limits, then you should find that the defendant was guilty of negligence in that respect also.

"3. It was the duty of defendant, in the running and handling of said train, to have exercised that degree of care and prudence which an ordinarily careful and prudent person engaged in like business would have

exercised, and a failure to exercise such a degree of care and prudence would be negligence.

"4. And, on the other hand, it was the duty of the plaintiff in crossing or attemping to cross the defendant's railroad track, to have exercised that degree of care and prudence that an ordinarily careful and prudent person, under like circumstances, would have exercised, and a failure to exercise such a degree of care and prudence would render him guilty of negligence.

"5. If, therefore, you believe from the evidence that the collision alleged in the plaintiff's petition occurred while the plaintiff was himself exercising that degree of care and prudence that an ordinarily careful and prudent person under like circumstances would have exercised, and that the collision was caused by negligence of the defendant or its servants, as the term 'negligence' is explained in either the first, second or third of the foregoing instructions, then your verdict should be for the plaintiff.

"6. But although the defendant was guilty of negligence in running its train at a greater rate of speed than six miles an hour, and although you may believe from the evidence that the defendant was also guilty of negligence, as that term is explained in either the second or third of the foregoing instructions, and although you may believe from the evidence that such negligence of the defendant contributed to cause the collision in question, yet if you also believe from the evidence that the plaintiff was also guilty of negligence, as that term is explained in the fourth instruction foregoing, and that such negligence of the plaintiff directly contributed to cause said collision, that is to say, if you believe from the evidence that said collision was the result, not of the negligence of the defendant alone, but of the joint negligence of both plaintiff and defendant,

then the plaintiff is not entitled to recover, and your verdict should be for the defendant.''

"9. If the jury find in favor of the plaintiff under the evidence and instructions in the case, they should assess his damages at such sum as the jury may believe from the evidence will be a fair compensation to him. *First*, for any damage to his property. *Second*, for any pain of body or mind. *Third*, for any loss of earnings. *Fourth*, for any physical disability or disfigurement which the plaintiff has sustained or will hereafter sustain by reason of said injuries and directly caused thereby, not exceeding the amount sued for.''

To which action of the court in giving said instructions, defendant at the time duly excepted.

The court then at the instance of defendant gave to the jury the following instructions:

"7. If the jury find from the evidence that the plaintiff approached the railway crossing with his horse and buggy, without paying any attention to his own safety but trusted to the obligations imposed upon the railway company to warn him of an approaching engine and train, and was injured by reason of his failure to so pay attention, they will find a verdict for the defendant.

"8. The court instructs the jury, that there is no sufficient evidence introduced by plaintiff showing that the alleged paralysis of his leg will be permanent, and in the event that they find a verdict for him, they will allow him nothing by way of damages as for a permanent paralysis of the leg.''

The jury thereupon returned a verdict for the plaintiff for $10,175. Defendant, within four days after verdict, filed its motion for a new trial, which being overruled, defendant appealed.

Defendant's first contention is that the court committed error in refusing to instruct the jury that under

all the evidence plaintiff could not recover and that the verdict must be for defendant. There is perhaps no question better settled in this state than that the running of a train of cars in violation of, and in excess of the number of miles per hour prescribed by a city ordinance is negligence *per se*. *Dahlstrom v. Railroad*, 108 Mo. 525; *Schlereth v. Railroad*, 115 Mo. 87; *Schlereth v. Railroad*, 96 Mo. 509; *Keim v. Railroad*, 90 Mo. 314; *Karle v. Railroad*, 55 Mo. 476; *Eswin v. Railroad*, 96 Mo. 290; *Kellny v. Railroad*, 101 Mo. 67; *Murray v. Railroad*, 101 Mo. 236; see also Thompson on Negligence, 588; *Johnson v. Railroad*, 20 N. Y. 65, and *Railroad v. Dunn*, 78 Ill. 197.

There is no question but that the injury sued for was occasioned by one of defendant's trains, which was at the time running in excess of the limit prescribed by the city ordinance, and if by reason of such excessive speed, or by reason of its failure to constantly sound the bell on the engine while in the city limits, plaintiff was run over or against and injured without negligence on his part contributing directly thereto he was entitled to recover.

The evidence in regard to ringing the bell and sounding the whistle was very contradictory; those in control of the train testified that the bell was being constantly rung, while several other disinterested witnesses testified to the contrary. Miss Binkenkamp, a witness for the defendant, who was about forty feet from the crossing at which the plaintiff was hurt, testified that when the plaintiff rose up in his buggy to look before crossing the track, that the train was about three or four hundred yards distant, and that when he attempted to cross, the train was two or three hundred feet from him, and that instant she called to a gentleman at the mill that plaintiff was going to get hurt, and as she looked around she saw the collision. She

also testified on her cross-examination that the bell was not ringing because she was looking at it. If the bell was not ringing this was also negligence *per se*. Authorities cited, *supra*.

Although defendant saw the train, and afterwards and before it struck him attempted to cross the railroad track, yet, if he did not know what train it was and that it was usually run at a rate of speed prohibited by ordinance, he had the right to presume that it was running within the prescribed time, at a rate not exceeding six miles per hour, and if such had been the case and he would have had time to have gotten across the railroad track in safety before it could have moved to where the collision occurred from where it then was, or he could have gotten his horse out of the way of the train in time to have avoided the collision, he was not guilty of such contributory negligence as would have justified the court in taking the case from the jury. Plaintiff stated as a witness that he saw the train about eight hundred yards east of him, near the smelting works between Howard station and Sublette avenue, and supposed that it was a locomotive on the smelting works switch. He did not know that it was the train that caused the injury, and even if he did, he had the right to rely upon the observance by persons in whose control it was, of the ordinance of the city in regard to the rate of speed at which it should run. Every reasonable presumption is to be indulged in the observance of the law by all persons, whether private persons or corporations. *Jennings v. Railroad*, 99 Mo. 394; *Kelly v. Railway and Transit Co.*, 95 Mo. 279; *Kellny v. Railroad*, 101 Mo. 67; *Eswin v. Railroad, supra*.

The cases relied on by defendant, to-wit: *Railroad v. Webb*, 8 Southern Rep. 518; *Railroad v. Mali*, 28 American and English Railroad Cases 628: *Zimmerman v. Railroad*, 71 Mo. 476; *Taylor v. Railroad*,

86 Mo. 457; *Kelley v. Railroad*, 75 Mo. 138; and *Fox v. Railroad*, 85 Mo. 679; are all cases where the injured party went on the track within a short distance of an approaching train, and without any precaution whatever, in either listening or looking, while in the case at bar plaintiff saw the train that collided with him, and if it had not been moving in excess of the rate of speed fixed by the ordinance or if the bell on the engine had been continously sounded, the injury might not have occurred.

The cases of *Railroad v. Houston*, 95 U. S. 697; *Schofield v. Railroad*, 114 U. S. 615; *Railroad v. Hobbs,* 19 American and English Railroad Cases, 337; *Mynning v. Railroad*, 28 American and English Railroad Cases, 667; *Harris v. Railroad*, 33 N. W. Rep. 12; *Brown v. Railroad*, 22 Minn. 165; *Railroad v. Mali*, 28 American and English Railroad Cases, 628; *State to use v. Railroad*, 58 Md. 482; *Hixson v. Railroad*, 80 Mo. 335; *Turner v. Railroad*, 74 Mo. 603; *Henze v. Railroad*, 71 Mo. 636; *Railroad v. Clark*, 73 Ind. 168; *Tolman v. Railroad*, 98 N. Y. 198; *Railroad v. Adams*, 33 Kansas 427; *Schaefert v. Railroad*, 62 Iowa, 624; *Pence v. Railroad*, 63 Iowa, 746; *Tully v. Railroad*, 134 Mass. 499; *Powell v. Railroad*, 76 Mo. 80; *Abbett v. Railroad*, 30 Minn. 482; *Haas v. Railroad*, 47 Mich. 401; *Kelly v. Railroad*, 8 Atl. Rep. 856; *Merkle v. Railroad*, 49 N. J. L. 473; *Railroad v. Richards*, 59 Texas, 373; *Railroad v. Morel*, 40 Ohio St. 338; *Rogstad v. Railroad*, 31 Minn. 208; *Flemming v. Railroad*, 49 Cal. 253; *Railroad v. Elliott*, 28 Ohio St. 340; *Woodard v. Railroad*, 106 N. Y. 369; *Yancey v. Railroad*, 93 Mo. 433; *Butts v. Railroad*, 98 Mo. 272, are all cases where the accident happened by reason of the injured party walking on the railroad track; or, at some railroad crossing in the country, or if in a city, where there was no ordi-

nance or law regulating the speed of trains, and where the injured party failed to look and listen before attempting to cross the track, and was therefore guilty of negligence contributing directly to the injury, and are not considered as controlling authority in the case at hand. The degree of care and caution required of plaintiff before and at the time of attempting to cross the railroad track was fairly presented by the fourth instruction given by the court of its own motion, and number seven at the request of defendant.

Negligence is ordinarily a question for the jury. It is always so when the evidence on material points is conflicting, or where the facts being undisputed different minds might reasonably draw different conclusions from them. Negligence can not be conclusively established, as a matter of law, upon a state of facts on which fair minded men of ordinary intelligence may differ as to the inferences to be drawn from it; and when the question of negligence arises upon even a conceded state of facts from which reasonable men might arrive at different conclusions, it must be submitted to the jury, and if the inferences to be drawn from the evidence are not certain or incontrovertible, the question of negligence cannot be passed upon by the court. *Tabler v. Railroad*, 93 Mo. 79; *Norton v. Ittner*, 56 Mo. 351; *Huhn v. Railroad*, 92 Mo. 440; *Mauerman v. Siemerts* 71 Mo. 101; *Nagel v. Railroad* 75 Mo. 653; *Keim v. Co.*, 90 Mo. 314. In considering the instructions in the nature of a demurrer to the evidence, every reasonable intendment in favor of plaintiff to be drawn from the evidence offered by him must be indulged, and the evidence introduced in his behalf regarded as absolutely true. And when this shall have been done, it seems clear that the court did right in submitting the case to the jury, as there was ample evidence to justify that course.

The law is that it is the duty of all persons before attempting to cross a railroad track at a public crossing to be on the alert and look and listen for approaching trains, so as to avoid injury, and if in failing to do so an injury occurs by reason of such negligence, recklessness or carelessness contributing directly thereto there can be no recovery, unless the persons in charge of the train either saw or might have seen, by the exercise of due care and caution, the perilous position of such person in time to have avoided the injury.

Yet, where the evidence is conflicting in regard to such matters, as in the case at bar, the issues should always be submitted to a jury. *Nagel v. Railroad,* *supra*, and authorities cited.

The court in a very clear and well prepared set of instructions submitted all of the issues to the jury with absolute fairness to both parties, and defendant's objections thereto are not tenable. Taken as a whole they seem to be unobjectionable.

The city had the power and authority under its charter as a police regulation to limit the movements of railroad trains by ordinance to not exceeding a certain number of miles per hour within its corporate limits, for the purpose of protecting persons and property, and while it has been the practice of this court to declare city ordinances void when in its judgment they were unreasonable, as well held in the case of *Corrigan v. Gage*, 68 Mo. 541; yet it has also been held that a clear case should be made out to authorize an interference by the court on the ground of unreasonableness. *St. Louis v. Weber*, 44 Mo. 547. The ordinance under consideration is not only reasonable, but is to be commended for its humane character and objects in the protection of life and property.

The remaining contention is that the damages were excessive, and the evident result of passion and prejudice, and for that reason, if for no other, the case should be reversed. The trial occurred about one year after the accident, and shows that the plaintiff is disfigured for life—his nose broken—that he is paralyzed permanently on one side, the left side of his face, his teeth broken and knocked out; three of his ribs broken on the left side, his spine and left hip injured; constant uneasiness in the left side, and that his practice, which was worth on an average of about $2,500 per annum, has been much less since his injury because of his inability to attend to it, in consequence of his injury; and that his injuries are permanent, and he an invalid for life. We could not say, under the circumstances, that the damages are excessive. *Porter v. Railroad*, 71 Mo. 66; *Dougherty v. Railroad*, 97 Mo. 647; *Griffith v. Railroad*, 98 Mo. 168. In this last case the court says: "The damages assessed are large, but in the absence of any evidence of passion, prejudice, favor or corruption of the jury we cannot undertake to presume their existence from the amount of the verdict alone, and, unless we could, there is no ground for reversal for excessive damages." *Sheehy v. Railroad*, 94 Mo. 574.

As there was no error in giving or refusing instructions, the judgment is affirmed.

BRACE, BARCLAY and MACFARLANE, JJ., concur; BLACK, C. J., concurs in a separate opinion, except as to the damages assessed, which he thinks excessive. GANTT and SHERWOOD, JJ., dissent.

Gratiot v. The Mo. Pac. R'y Co.

SEPARATE OPINION.

BLACK, C. J.—I concur in all that is ruled in the majority opinion, except what is said in relation to the amount of damages. The plaintiff's evidence tends to show that his horse, buggy and harness were worth from $215 to $250. He says his practice had been worth to him on an average about $2,500 per year, prior to the accident, and that his books would show a loss in the year after the injury of $1,500. It is evident that this loss was due in a great measure to the fact that he had no horse and buggy to enable him to go to his country patients. This case was tried about one year after the injury. His evidence as to his personal injuries is in substance this: Three or four of my teeth were knocked out. My nose was broken; cannot draw air through this nostril at all; it was not particularly injured so far as shape is concerned; the nerve is more affected than the bony structure. Three ribs were broken; have an impression that they are loose, but am not clear about that. There is a constant uneasiness in one side due I should say to partial paralysis. There was some injury to the spine; I suppose it was from the shock I received. I was in bed two or three weeks. He stated on cross-examination that he walked a great deal and could walk reasonably well. Being asked what he meant by saying he thought his injury was permanent, he said: "I judge so, I presume so more than upon any definite ground. My leg is uncomfortable and I fear it will remain so for a long time."

Giving to this evidence all inferences that can be fairly drawn from it in favor of the plaintiff, still I am of the opinion that the verdict is excessive. The plaintiff should be required to remit at least $3,000 and upon doing so the judgment should be affirmed.

If he refuses to remit this, the judgment should be reversed and the cause remanded.

BARCLAY, J.—This case reached the court in banc by transfer from the second division at the October term, 1891, after steps shown in the report of the case in 16 L. R. A. 189.

Our jurisdiction to review upon the merits is seriously challenged by plaintiff's counsel.

The chronology of the material proceedings in the divisional court is this:

### APRIL TERM, 1891:

April 23, 1891.   Cause argued and submitted.

May 19, 1891.   Judgment affirmed; opinion by THOMAS, J.

May 26, 1891.   Motion for rehearing filed.

October 12, 1891.   Motion for rehearing overruled; opinion by THOMAS, J.

### OCTOBER TERM, 1891:

October 14, 1891.   Motion to set aside order overruling motion for rehearing filed.

December 22, 1891.   Last motion sustained, rehearing granted and cause transferred to court in banc (THOMAS, J., *dissenting*).   The April term, 1891, expired after the motion for rehearing was denied, and the steps to set aside the overruling order were taken at a later (the October) term, 1891.

This last "motion to set aside," etc., is based on grounds disputing the correctness of the legal propositions advanced in the divisional opinions.   It does not assert any irregularity of procedure in reaching the result in the case.

The plaintiff, on the other hand, insists that the motion was improvidently sustained, and that it was beyond the constitutional powers of division number two to set aside its final judgment of the former term in that manner.

It is plain that there must be a stage of every cause at which further investigation of its merit ceases. The interests of justice demand the establishment of some fixed terminal point to litigation. That point is ordinarily understood to be the close of the term of final judicial action in the case. But it may generally be moved further forward by appropriate steps, taken at that term, if authorized by law. Successive motions for review, in indefinite series, obviously cannot be tolerated by any court, though it is not so easy to mark the point at which they must stop.

A standing rule here permits the filing of a motion for rehearing on certain stated grounds (102 Mo. Appendix, Rule 20), and, in many instances, those motions prove of great service and value to the court; but when one is denied, and the term thereafter lapses, we discover no authority on which to sustain further moves at a subsequent term to rectify judicial errors in a judgment.

This court, some forty years ago, said: "There would be no end to litigation if county courts, or any other courts, could review their own acts from term to term and correct supposed errors in their past decisions. The matter is beyond their reach." *Peake v. Redd* (1857). 14 Mo. 83; *Bremer v. Dinwiddie,* (1857) 25 Mo. 351.

To justify action by this court, or either division thereof, in any cause, at a later term than that at which the motion for rehearing is overruled, something must be done at that term to retain the jurisdiction to act upon it; otherwise no judicial errors therein can be reviewed after the term lapses. It was expressly so

held by the second division of this court, with reference to extending time for bills of exceptions in the circuit court, in *State v. Berry* (1890), 103 Mo. 367, following older cases, and the same principle governs the case before us.

The rule of this court, permitting motions for rehearing to be filed within ten days after the decision of a case, it may be conceded, amounts in effect to a standing order in each decided cause; but its force extends only to one motion for rehearing, and obviously is not intended to sanction an unlimited number of motions to set aside orders as they may be made, after the ruling upon the motion for rehearing.

The United States supreme court and other courts of last resort have often ruled that a motion for rehearing of the merits, first made at a term subsequent to final judgment, cannot properly be considered. *Hudson v. Guestier* (1812), 7 Cranch 1; *Brooks v. Railroad* (1880) 102 U. S. 107; *Milam Co. v. Robertson*, 47 Tex. 222; *Daniels v. Daniels*, 12 Nev. 118. That proposition is firmly settled; and beyond it, we find no authority in the rules of court or in any order in this action authorizing the interposition of such a motion as that made herein, October 14, 1891, after the close of the term at which the motion for rehearing was overruled. We are of opinion that this cause passed beyond the jurisdiction of this court to review, upon its merits, at the end of the April term, 1891, and consequently that the rehearing was erroneously granted thereafter. The order granting it should, we think, be vacated, and the motion to set aside order overruling motion for rehearing should be overruled.

As the result of that action would be substantially the same as an affirmance of the judgment (*Bernard v. Callaway Co. Ct.* (1859) 28 Mo. 37, we concur in affirming for the reasons above indicated. BRACE, J., joins in this opinion.