CZEZEWZKA v. BENTON–BELLEFONTAINE RAILWAY COMPANY, *Appellant.*

Division One, March 24, 1894.

1. **Negligence:** DEATH OF INFANT: STREET RAILWAY: PLEADING. The petition, in an action by parents against a street railway company for the negligent killing of their child, need not aver that he was unmarried, where it does allege that he was the "infant son" of plaintiffs "under the age of two years."

2. ——: ——: ——: INSTRUCTION. Where, in an action by parents for the wrongful killing of their child, it was charged in the petition and conceded on the trial that it was an infant of tender years, it was not necessary to instruct the jury upon the question of its being unmarried.

3. **Practice in Supreme Court:** EXCEPTIONS. Rulings of the trial court which are not excepted to will not be reviewed upon appeal.

4. **Practice:** EXPERT TESTIMONY: STREET RAILWAY. A witness who has had experience as a street car driver may testify, in an action against a street railway company, as to the position such driver should assume in operating a street car.

5. ——: TEMPER OF WITNESS: CROSS-EXAMINATION. When necessary to aid the jury in properly weighing the testimony of a witness, he may be so cross-examined as to make manifest his feeling, temper and disposition and the extent of such cross-examination must be left largely to the discretion of the trial judge.

6. **Street Railway:** NEGLIGENCE: KILLING OF CHILD: DEGREE OF CARE. In an action by parents against a street railway company for the killing of their infant child, they are entitled to recover, if the child's death was caused by the negligence of the driver of defendant's car while running the same, without negligence on the part of the child's parents; and this is true although they may have been guilty of neg-

ligence in permitting the child to escape upon the street, provided the death of the child might have been avoided by the exercise of ordinary care on the part of the driver.

*Appeal from Warren Circuit Court.*—HON. W. W. EDWARDS, Judge.

AFFIRMED.

*Nathan Frank* and *Chas. W. Bates* for appellant.

(1) The hypothetical question as to the distance in which a car can be stopped should embody all the facts relating to the subject. *Senn v. Railroad*, 108 Mo. 142. (2) The petition fails to state a cause of action in that it does not state that the deceased was unmarried. R. S. of Mo. 1889, sec. 4425; *Barker v. Railroad*, 91 Mo. 86; *Sparks v. Railroad*, 31 Mo. App. 190; *Dulaney v. Railroad*, 21 Mo. App. 597; *McIntosh v. Railroad*, 103 Mo. 131. (3) The instructions for the plaintiff are erroneous in that they authorized a recovery by the plaintiff without a finding that the deceased was unmarried. (4) The liability of defendant in this case depends upon whether the driver was negligent after the deceased was in danger. *Overholt v. Vieths*, 93 Mo. 422; *Donahoe v. Railroad*, 83 Mo. 543; *Dunn v. Railroad*, 98 Mo. 652; *Rine v. Railroad*, 88 Mo. 392. (5) Negligence on the part of the parents in permitting the child to go upon the street unattended to a place of danger, where it was killed, is a complete defense. It follows that the acts of the child in going to a place of danger is a part of the defense, for the negligent permission on the part of the parents would not defeat action; unless, under their negligent permission, the child acted and went in such place where it was dangerous, and where it was killed. (6) It is error to give an instruction which assumes a con-

troverted fact. *Stoher v. Railroad*, 91 Mo. 509. (7) Where an instruction for appellee is erroneous, the error is not cured by a correct one on the same subject given for the appellant. *Billups v. Daggs*, 38 Mo. App. 367. (8) The giving of conflicting instructions is error, especially where the erroneous instructions were given at the instance of appellee, and the jury found a verdict in favor of appellee. *Bluedorn v. Railroad*, 108 Mo. 439. (9) An instruction calculated to mislead the jury should be refused. *Wigsby v. Fullerton*, 67 Mo. 309; *George v. Railroad*, 40 Mo. App. 447.

*Sterling P. Bond* for respondent.

(1) The hypothetical questions as to the distance in which a car can be stopped, embodied all the facts relating to the subject and no hypothetical question was objected to. The action of the trial court in admitting and rejecting evidence must be objected to and specifically excepted to at the time, otherwise the appellate court will not consider it. *Harrison v. Bartlett*, 51 Mo. 170; *Keim v. Railroad*, 90 Mo. 314; *Griffith v. Hanks*, 91 Mo. 109; *Parsons v. Railroad*, 94 Mo. 286. (2) The petition states a cause of action; it states that the deceased was an infant, under two years of age. R. S. of Mo. 1889, sec. 6840; 2 Kent's Com. [13 Ed.], sec. 78, p. 94; 2 Cooley's Bla. Com. [3 Ed.], sec. 22, p. 285; *McIntosh v. Railroad*, 103 Mo. 131. (3) The plaintiff can recover in this case, if the driver saw deceased in danger, or by the exercise of ordinary care could have seen deceased in danger, and by the exercise or ordinary care could have prevented the death. *O'Flaherty v. Railroad*, 45 Mo. 70; *Frick v. Railroad*, 75 Mo. 595; *Welsh v. Railroad*, 81 Mo. 466; *Dunkman v. Railroad*, 95 Mo. 232; *Jennings v. Railroad*, 99 Mo. 394; *Rosenkranz v. Railroad*, 108 Mo. 9; *Senn v. Railroad*,

108 Mo. 142; *Humbird v. Railroad*, 110 Mo. 76. (4) Instruction does not assume controverted facts. *O'Connell v. Railroad*, 106 Mo. 482. (5) To warrant a reversal there must be positive error in instructions, materially affecting the merits of the case. *Barry v. Railroad*, 98 Mo. 62; *Haniford v. City of Kansas*, 103 Mo. 172; R. S. 1889, sec. 2303. (6) Defendant can not be allowed to complain of plaintiff's instructions, where his own announced the same doctrine. *Holmes v. Braidwood*, 82 Mo. 110; *Thorp v. Railroad*, 89 Mo. 666; *McGowen v. Railroad*, 109 Mo. 518. (7) All of the instructions given by the court, whether for the plaintiff or defendant, must be taken and read together; and if being so read, they are consistent and not calculated to mislead the judgment, should be permitted to stand. *Karl v. Railroad*, 55 Mo. 476; *Whalen v. Railroad*, 60 Mo. 323; *Reilly v. Railroad*, 94 Mo. 600; *Shortel v. St. Joseph*, 104 Mo. 114; *Dickson v. Railroad*, 104 Mo. 491. (8) In a cause like this it is proper, under proper instructions, for the jury to determine, whether or not the parents were guilty of negligence which contributed to the infant's death. *O'Flaherty v. Railroad*, 45 Mo. 70; *Frick v. Railroad*, 75 Mo. 542; *Farris v. Railroad*, 80 Mo. 325; *Reilly v. Railroad*, 94 Mo. 600. (9) The court properly refused the instruction in the nature of a demurrer to evidence asked by defendant. *Ewing v. Railroad*, 96 Mo. 290; *Weber v. Railroad*, 100 Mo. 194. (10) It is not error to show by competent testimony how street cars are managed and operated. *Boland v. Railroad*, 36 Mo. 484; *Dougherty v. Railroad*, 81 Mo. 325; *Rosenkranz v. Railroad*, 108 Mo. 9. (11) The cross-examination of a witness is of necessity largely under control and within the discretion of the primary court. *Ingram v. State*, 67 Ala. 67. (12) It is negligence for driver to be looking

back.   *Collins v. Railroad,* 142 Mass. 301; *Humbird v. Railroad,* 110 Mo. 76.

BRACE, J.—This is an action for damages originally brought in the circuit court of the city of St. Louis, by John Czezewzka and his wife Eva, against the defendant for the death of their infant son.   The case was taken by change of venue to the Warren county circuit court, where it was tried.   Before the trial the husband died. The plaintiff Eva on the trial obtained a judgment for $5,000, and the defendant appealed.

The cause of action as set out in the petition is as follows:

"That on or about the fifth day of July, 1889, Gustavus Czezewzka, an infant son of said plaintiffs, under the age of two years, whilst upon North Fourteenth street, a public thoroughfare in the city of St. Louis, was run over and killed by the defendant's street car, hauled by a team of mules attached thereto, on said Fourteenth street, by reason of the carelessness and negligence and disregard of duty on the part of the servant of said defendant, in managing and operating said car, and in failing to keep a proper lookout for persons approaching and on defendant's street car track.

"Plaintiffs further aver that at the time said Gustavus Czezewzka was run over and killed, the defendant had a driver on the front platform of said car, driving said team attached thereto, and that the driver saw, or in the exercise of reasonable care and diligence in keeping a lookout for persons on foot, either on the track or moving towards it, could and would have seen the plaintiff's son in time to have stopped said car so as to have prevented said injuries; nevertheless, said driver carelessly and negligently failed to observe said infant, in said perilous position, or esle care-

lessly and negligently failed to stop said car after observing him, and before said accident, as it was the duty of the driver to do, and as he might, by the exercise of reasonable care and diligence, have done; and that such carelessness and negligence on the part of said driver directly contributed to said death.

"And the plaintiffs further aver that, at the time of said injuries and death, the agent and servant of the defendant in charge of said car, saw, or by the exercise of reasonable care and diligence would have seen, said infant in time to have stopped said car and prevented said death; yet, he failed and neglected so to do, which failure and negligence on his part directly contributed to cause said death."

The answer was a general denial and a plea of contributory negligence on the part of plaintiffs in permitting the deceased to go unattended on or near the defendant's track; upon which issue was joined by reply.

The facts, as they appear in the evidence, in support of plaintiff's case, are, that on the morning of July 5, 1889, the father of the deceased infant was not at home, having gone to his work; that the three older children had gone to school, and the three younger children were asleep in one room. While their mother was in the kitchen preparing her husband's breakfast, the infant son who was killed awoke and escaped into the street. When the child got out the mother did not know. They had been married about thirteen years; were laboring people; the husband earned $30 per month, upon which he and his family subsisted; they were not able to hire a nurse for their infant; other people lived in the same yard, and whenever the mother saw the gate open, she closed it. The mother was first attracted to the street by a a noise in the street, and there, for the first time, dis-

covered that her son had escaped into the street, and was killed by defendant's street car. The day was bright, the street was open, and the driver could have seen everything in front of him; the baby was seen from eight to thirty feet in front of the mules, playing on the car track; the driver was hallooed at, to "look out for the baby," when it was some thirty feet in front of the mules, playing on the track, and there is testimony to the effect that he hallooed several times himself. He was talking to a man on the front rail of the dashboard and looking back; he had his lines in his hand, but his hand was not on the brake. It was shown that the way to manage and operate a car was to have the lines in one hand and the brake in the other. The car was going at the usual gait, and the car could have been stopped within from two and a half to six feet. The wheels of the car passed over the child before it was stopped, and the child was killed. The car was about twelve feet long, and one witness testified that it ran from sixty to sixty-five feet from where he first heard the hallooing until it was stopped.

The defendant's case is most strongly presented in the following evidence of Booth, the driver, given in its behalf: "Was driver on the Bellefontaine car that ran over the child on July 5; it was about 7:17, on North Fourthteenth street, between Angelrodt and Buchanan. The first I saw of it, it was four feet from the track, and the child was moving when I seen it, and I made some exclamation of warning, and started to put on my brake, and immediately stopped the car; and the mules made a sort of surge, and if anything hit the child and knocked it down it was the trace; I could not say exactly when the child fell; it was right at the dash board; was right almost under me when it struck the rail; I threw on my brake as quick as I could, and

stopped the car; I saw the child no more after it fell to the ground; the child made no stop when I gave the exclamation, the mules made a sort of surge and I commenced putting on my brake immediately, just the instant I saw the. child; it was all done instantly; it was on the west side of the car track, and it was angling sort of towards me; I made an utterance of some kind; the child ran into the mule right at its hind foot; it was near the middle of the block between Angelrodt and Buchanan; I was not talking to anybody at the time; I was looking directly ahead of me when I saw the child; my hand was on the brake from the moment I saw the child coming in the direction of the car to the time it reached there; I could not stop the car in time to save the child."

At the close of the evidence the court refused to give for defendant one instruction in the nature of a demurrer to the evidence, and submitted the case to the jury on the following instructions:

### PLAINTIFF'S INSTRUCTIONS.

"1.    The court instructs the jury, that if you believe from the evidence produced before you, that on or about the fifth day of July, 1889, the defendant corporation was operating a street railway, running for a part of its course along North Fourteenth street in the city of St. Louis, and at the time aforesaid, the driver in charge of one of defendant's cars, and then in the employment of defendant as such driver, was guilty of negligence or carelessness in managing and operating said car along said street, and that by reason of said negligence or careless management and operation, and, as a direct consequence thereof, such car ran over and injured Gustavus Czezewzka, the infant son of the plaintiffs, without any negligence on the part of his

parents, that he, the said Czezewzka, died as a result of such injury, then the plaintiff is entitled to a verdict at your hands.

"2.   The court instructs the jury that it was the duty of the driver of defendant operating and managing its car in question, to keep a reasonable outlook for persons on foot, either on its track or moving towards it; and if the jury believe from the evidence that the driver saw said infant and the danger it was in, or by the exercise of ordinary care would have seen said Gustavus Czezewzka, and the danger he was in, in time to have stopped his car and avoided injuring him by the exercise of ordinary care and precaution, and by a reasonable use of the means at his hands, then the plaintiff is entitled to a verdict at your hands.

"3.   The court instructs the jury that, though you may believe from the evidence that the plaintiff was guilty of negligence in permitting her infant son to escape upon the street unattended at the time of the accident; yet, if you further believe, and find from the evidence that the defendant's servant in charge of said car was guilty of negligence in the management of defendant's car, and that such carelessness or negligence was the immediate cause of the death of deceased and that by the exercise of ordinary care and precaution on the part of said servant or driver the death of said infant might have been avoided, then you will find for the plaintiff.

"4.   The court instructs the jury that in determining whether the plaintiffs contributed by their negligence in the custody and care of their child, to its injury and death, you are to consider whether or not they exercised that degree of care, caution and watchfulness over their child in keeping him off the street and out of danger which was reasonable and proper for

parents in their circumstances of life as shown by the evidence.

"5. If you believe from the evidence that Gustavus Czezewzka at the time of his death had not arrived at two years of age, you are not to consider his acts in determining whether or not there was contributory negligence on the part of the plaintiff, as no negligence can be attributed to so young a child.

"6. If, upon the evidence and the instructions given, you find for plaintiff, you will assess her damages at five thousand dollars."

### DEFENDANT'S INSTRUCTIONS.

"1. If from all the facts and circumstances in evidence in this case the jury believe that the injury of the child in question was the result of accident or misadventure, the verdict should be for the defendant.

"2. Although the jury find from the evidence that the plaintiff's child was run over and injured by the defendant's car, yet that fact alone does not entitle plaintiff to a verdict in this action. Before a verdict can be rendered for plaintiffs, they are bound to prove to the satisfaction of the jury by a preponderance of the testimony that the child in question was injured solely by reason of, and as a direct consequence of the negligence of the driver in charge of the car; and unless such negligence is so proved, the verdict must be for the defendant.

"3. And by 'preponderance' as used in this instruction is meant that the evidence in support of plaintiff's petition shall be more trustworthy and convincing to your minds than the contrary evidence.

"4. If the jury believe from the evidence that the defendant's cars and other vehicles were frequently passing in front of plaintiff's house, and that the child

in question had, previous to the day of its death, been seen playing in the streets, and that these facts were known, or by the exercise of ordinary care might have been known to the plaintiffs, or either of them, and if the jury further find from the evidence that the plaintiffs, or either of them, failed to exercise that degree of care and prudence which people in their condition and circumstances should exercise to keep their children out of danger, and that the child in question was, by reason of such failure on the part of plaintiffs or either of them, in the street unprotected and unattended by anyone, and unable by reason of its tender years, to take care of itself, and that such failure on the part of the parents directly contributed to the injury to the child complained of, then plaintiffs can not recover in this action, and the verdict must be for the defendant.

"5.   If the jury believe from the evidence that the driver in charge of the car was exercising reasonable care and vigilance immediately before and at the time he saw the child near, or approaching the track, and that he did not discover the child upon the track, or see it approaching the same in time to prevent the injury complained of, then the plaintiff can not recover in this action and the verdict must be for the defendant.

"6.   If the jury find from the evidence that the child in question was upon Fourteenth street, between crossings, and that as the car was approaching ran towards the track and against the mules attached to said car; and if you further find from the evidence that when the child started to run towards the track, the defendant's driver in charge of said car put on the brake and did all that a careful and prudent man under the same circumstances could have done to avoid running over the child, than your verdict shall be for the defendant."

I. It is contended that the petition failed to state a cause of action, in that it did not state that the deceased was unmarried, and that the instructions for the plaintiff are erroneous in that they authorize a recovery by the plaintiff without a finding that the deceased was unmarried. It was alleged in the petition that the deceased was "the infant son" of the plaintiffs "under the age of two years." Under our system of pleading in which the courts are required by statute "to distinguish between form and substance" and to construe the allegations of a pleading "liberally" with a view of substantial justice between the parties" (R. S. 1889, secs. 2074, 2117), and in a state where marriage is "a civil contract" "to which the consent of the parties capable in law of contracting is essential" (section 6840), it must be held that it was sufficiently alleged that the deceased was unmarried. *McIntosh v. Railroad,* 103 Mo. 131. During the whole of the trial the deceased was spoken of by court, counsel and witness as an infant of the tender years charged in the petition. It was a conceded fact on the trial, and it was not necessary to instruct the jury upon the question of its being unmarried.

II. It is assigned for error that two of plaintiff's witnesses were permitted to give their opinion as to the distance within which the car could have been stopped, on the ground that the hypothecated questions put did not embody all the facts relating to the subject. The defendant is in no position to urge this objection here, as the questions asked were not objected to in the court below. We can review only *the rulings* of the trial court, and these only when they are duly excepted to.

These same witnesses were also permitted, over general objections of the defendant, to testify as to the position in which a driver should be when operating a

street car. Their evidence had previously shown that they had been street car drivers, had experience as such, were familiar with the manner in which such cars should be driven, and we find no error in the admission of this evidence.

The defendant's counsel also objected to the following part of a cross-examination of one of defendant's witnesses, who had, in his direct examination, related his action as a driver on one occasion when he saw a little child in the same neighborhood on the track:

"*Q.* And you had humanity enough in you to turn aside and not run over the baby? *A.* Yes, sir.

"*Q.* You wouldn't run over a little baby in the street? *A.* No, sir.

"*Q.* When you drive on the streets you see what you are doing, don't you? *A.* Certainly."

We fail to see wherein the cross-examination could have materially prejudiced the defendant's case. It often becomes necessary, in order that a jury may properly weigh the testimony of a witness, that his temper, feeling and disposition be made manifest by cross-examination. The extent to which this may go must necessarily be left largely to the discretion of the trial judge. We see no such abuse of that discretion here as would warrant the interference of an appellate tribunal.

III. It is obvious on the face of the statement that the evidence made a proper case to go to the jury, and that the court committed no error in refusing a nonsuit.

We come now to the objections to the action of the court on instructions. It is contended for the defendant that instructions 2, 3, 4 and 5, given for the plaintiff, are inconsistent with those given for the

defendant, and that in the latter the law is declared correctly, and in the former incorrectly.

In the instructions for the plaintiff the jury are, in substance, instructed that if the child's death was caused by the negligence of the driver, while running the defendant's car and without negligence on the part of its parents the plaintiff is entitled to a verdict, and that, although they may believe that the plaintiff was guilty of negligence in permitting her infant son to escape upon the street, yet, if they find from the evidence that the death of the infant might have been avoided by the exercise of ordinary care upon the part of the driver, they will find for the plaintiff. The doctrine of these instructions as applicable to cases of infants of such tender years as to be incapable of the exercise of judgment or discretion, in actions brought by the parent for the death of the child or by the child for injuries under the statute for damages, has been sanctioned and maintained by this court in a long and unvarying line of decisions. *Boland v. Railroad*, 36 Mo. 484; *O'Flaherty v. Railroad*, 45 Mo. 70; *Morrissey v. Ferry Co.*, 43 Mo. 380; *Isabel v. Railroad*, 60 Mo. 475; *Farris v. Railroad*, 80 Mo. 325; *Donahoe v. Railroad*, 83 Mo. 543; *Reilly v. Railroad*, 94 Mo. 600; *Winters v. Railroad*, 99 Mo. 509; *Rosenkranz v. Railroad*, 108 Mo. 9.

It is simply an application to this class of cases of the familiar and well established principle that, although a person may have negligently exposed himself to danger, the duty still remains not to negligently kill or injure him, and this is a duty which one operating dangerous machinery owes not only to the person who may be injured, but to society, and for neglect of which the statute gives damages to the parents where the person injured is an infant. It was for the damages which the statute gives for such neglect,

that the plaintiff sued, and, whether the defendant was guilty of such neglect was the issue presented to the jury, not in terms as clear and explicit as it might have been, but in such a manner as that they could not have been misled, by the plaintiff's instructions, the theory of which is correct in principle and sanctioned by the authorities cited.

The defendant's instruction number 4, on the issue of contributory negligence, though more favorable to it than the facts in evidence would seem to warrant, is not inconsistent with plaintiff's instructions 4 and 5 on the same subject, since the jury, under them, may well have found that, although the parents were negligent in permitting the child to escape upon the street, yet such negligence was not a proximate, direct, contributory cause of its death. Nor is there any essential conflict between instruction number 2 for the plaintiff and number 5 for the defendant; for if the driver was exercising reasonable care and vigilance immediately before he saw the child near, or approaching the track, he was necessarily keeping a reasonable outlook for persons on the track or moving towards it, and if by such outlook he could not have discovered the child near or approaching the track, he is not chargeable with negligence under the terms of plaintiff's instruction. Reading all these instructions together, as they should be read, we find no such inconsistency in them as would be likely to confuse or mislead the jury in determining the issues of fact in the case intelligently; nor do we find any such serious fault in the plaintiff's instructions, as calls for a reversal, though they might have been much more concise, clear and explicit.

The expression, "If the jury believe from the evidence that the driver saw said infant and the danger he was in," etc., contained in plaintiff's second instruction, is criticised as assuming as a fact that the driver saw or

might have seen the child in danger. That the child was in danger for some moments of time previous to the collision was an obvious and undisputed fact. The only question on this issue was, did the driver see him or could he by the exercise of reasonable care have seen him in such danger in time to have avoided injuring him by a reasonable use of the means at his command. The objection is hypercritical; the issue was well enough submitted and could not have been misunderstood. Finding no reversible error in the trial of this cause, the judgment is affirmed. All concur.