BAIRD v. CITIZENS' RAILWAY COMPANY, *Appellant.*

Division Two, November 21, 1898.

146    265
150    397

146    265
95a  ³738
98a  ⁴ 15
99a  ⁴172
99a  ⁵173
99a  ⁴369

146    265
101a  ⁵706

146    265
e178  ²186

1. **Pleading**: DEATH OF MINOR: UNALLEGED MARRIAGE. A petition by a mother to recover for the negligent killing of her minor son, which fails to state that he "died unmarried," but does state that he was six years of age at the time of his death, sufficiently alleges that he was unmarried, in view of the statutes (secs. 2074 and 2117) requiring a liberal construction of pleadings and directing courts to consider substance rather than form.

2. **Negligence**: CABLE CAR: GRIPMAN. If there was nothing to obstruct the view of one who had control of the movement of cable cars, and he saw or by the exercise of due diligence might have seen, the perilous position of a child six years old, in time to have checked the speed of the cars and thereby have avoided injuring him, but failed to do so, he is remiss in his duties, and the company is chargeable with the child's consequent death.

3. ———: ———: ———: LOOKING AHEAD: SIGNALS. It is the duty of one having control of the movement of cable cars, to keep a lookout along the track where persons are likely to be. If, therefore, such person might, by having his attention on the street in front of the cars, have discovered, in time to have stopped the cars, that a child was about to cross the track, or if after discovering his danger he failed to give the usual signals to warn him of the cars' approach, he was guilty of negligence.

4. ———: DEMURRER TO EVIDENCE: WHEN AUTHORIZED: APPLICATION OF RULE. Before a court is authorized to sustain a demurrer to the evidence because of its insufficiency, it must appear that, admitting all the evidence introduced by plaintiff to be absolutely true and giving him every reasonable inference to be deduced therefrom, he is not entitled to recover. And in applying this rule to a suit for negligence it must be remembered that negligence is not a fact which is the subject of direct proof, but an inference from facts put in evidence.

5. ———: ———: ———: DISPUTED FACTS. Whether the facts produced in evidence by plaintiff are disputed or undisputed, if different minds might ho nestly draw different conclusions from them, the case should not be taken from the jury.

6. ———: INSTRUCTIONS. Although an instruction is not couched in, the exact language used in the petition, yet if that is substantially done, and it is not an enlargement thereon, it is not error to give it.

*Appeal from St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

AFFIRMED.

*Smith P. Galt* for appellant.

(1) Plaintiff's right of recovery rests primarily and solely upon the cause of action, if any, granted under section 4425 of the Revised Statutes of Missouri, 1889, the provision of which that is applicable to this case, being, "if such deceased being a minor and unmarried," and there was no averment in the petition that the deceased was "unmarried," nor was there any evidence at the trial in that regard. Therefore there was a total failure to allege or to prove a cause of action, or right of recovery. *Proctor v. Railroad*, 64 Mo. 112; *Sparks v. Railroad*, 31 Mo. App. 111; *Dulaney v. Railroad*, 21 Mo. App. 597; *Barker v. Railroad*, 91 Mo. 86; R. S. 1889, sec. 2047. (2) There was no evidence on the part of plaintiff that the gripman was "failing to keep a proper lookout for persons approaching its tracks," or that the gripman, "by the exercise of reasonable diligence could have discovered the peril in which the plaintiff's said minor son was placed on or near the tracks of the defendant in time to have avoided injury, and that he negligently and carelessly failed to stop said train, after such peril was or could by the exercise of reasonable care have been seen by him, and thus have avoided the injury to

said minor." Or that there was any negligence on his part "in failing to sound a gong or warning signal that is required by proper and prudent management and as is customary when persons are in close proximity to its tracks," which are the sole allegations of negligence in the petition, according to the evidence for plaintiff. *Maschek v. Railroad*, 71 Mo. 276; *Watson v. Railroad*, 133 Mo. 246; *Van Natta v. Railroad*, 133 Mo. 13; *Sullivan v. Railroad*, 133 Mo. 1; *Spillane v. Railroad*, 135 Mo. 414.

*L. Frank Ottofy* for respondent.

(1) The allegation of the petition that she was the mother of a minor aged six years, justifies the inference that he was childless and unmarried, and this is sufficient. *McIntosh v. Railroad*, 103 Mo. 131; *Czezewzka v. Railroad*, 121 Mo. 201. (2) Where the facts are either disputed, or different inferences may be fairly drawn from undisputed facts, the question of negligence is for the jury," and authorities are superfluous to support the proposition. *Eichorn v. Railroad*, 130 Mo. 575; *Purtell v. Jordan*, 156 Mass. 573; *Wallace v. Railroad*, 37 Pac. Rep. 477; *Graney v. Railroad*, 140 Mo. 89. (2) Instruction number 1 for plaintiff was properly given: (*a*) Because it is amply supported by the evidence. (*b*) Because defendant's criticism that the instruction referred to the time when the boy was on the pavement is unwarranted. *Bamberger v. Railroad*, 31 S. W. Rep. 163. (*c*) Because the failure to give an alarm or warning signal is negligence. When a boy six years of age is going into a position of danger, the gripman should have given him a warning signal by bell, or otherwise. *Mitchell v. Railroad*, 37 Pac. Rep. 341; *Nixon v. Railroad*, 109 Mo. 413; *Railroad v. Watkins*, 26 S. W. Rep. 761;

*Johnson v. Railroad*, 86 Wis. 71; *Guenther v. Railroad*, 95 Mo. 299; *Railroad v. Barber*, 31 S. W. Rep. (Ky.) 482. (*d*) Because the defendant's refused instruction, number 6, accepted the same theory as set out in this instruction. (3) The failure of the gripman to look ahead when within thirty-five feet of the boy, was negligence. It was his duty to keep a vigilant lookout for him, and to discover him on or near the track in a position of peril. *Evers v. Traction Co.*, 176 Pa. St. 376; *Rosenkranz v. Railroad*, 108 Mo. 9; *Humbird v. Railroad*, 110 Mo. 76; *Moore v. Railroad*, 126 Mo. 265; *Bunyon v. Citizens*, 127 Mo. 13; *Mitchell v. Railroad*, 37 Pac. Rep. 341; *Evers v. Traction Co.*, 176 Pac. St. 376; *Spillane v. Railroad*, 111 Mo. 555; *Consolidated Traction Co. v. Scott*, 33 L. R. A. 122. (4) The motorman's negligence may be inferred from circumstances. *Haynes v. Railroad*, 54 Mo. App. 582; *Atkinson v. Oelsner*, 10 N. Y. Sup. 822.

BURGESS, J.—This is an action instituted by plaintiff, the mother of Harry Baird, a minor, for the recovery of $5,000 damages under the provisions of section 4425 (Revised Statutes 1889) for his death, occasioned, as she alleges, by the negligence of defendant.

The petition alleges that plaintiff is a widow, and the mother of Harry Baird who died on the thirty-first day of May, 1893, then aged six years, but it does not allege that he was unmarried.

The acts of negligence are alleged to be that defendant "in failing to sound the gong, or warning signal, as is required by proper and prudent management, and as is customary when persons are in close proximity to its tracks and in failing to keep a proper lookout for persons approaching its tracks," struck the said minor by its grip car of said train, and injured him so that he died within a short time thereafter, and that the

failure of defendant's servants and agents in charge of and operating said train of cars, to sound the gong, or warning signal, while said minor was approaching its tracks, and going into, and in a position of danger, and to keep a proper lookout for persons on, or approaching its tracks, was the direct result of said injuries; that the servants in the employ of defendant "in charge of said train, did or by the exercise of reasonable diligence could have discovered the peril in which the plaintiff's said minor son was placed on or near the tracks, in time to have avoided the injury, but, negligently and carelessly, failed to stop said train after such peril was or could by the exercise of reasonable care have been seen by its servants or employees in charge of said train, and thus have avoided the injury to said minor."

The answer admitted the incorporation and business of defendant, the relationship of plaintiff to deceased and that he came to his death by reason of being run over by a car of the defendants and denied all the other allegations of the petition, and further averred that his death was the result of his own negligence in running in front of or against the front corner of the grip car, while the same was in rapid motion; which averment was denied by the reply.

There was a trial to a jury who rendered a verdict in favor of plaintiff for $5,000 upon which judgment was rendered, from which defendant appeals.

The facts of the case as disclosed by the evidence, briefly stated, were that plaintiff's son, Harry, aged six years, small of his age, and rather clumsy, about 5 o'clock P. M. of May 13, 1893, started with his sister Lulu from number 3512, Easton avenue, St. Louis, where they resided with their mother, to a grocery store about two blocks distant, on an errand. Lulu forgot what she had been sent for, and sent Harry back to the

house to ascertain what it was.  When he reached the house Minnie Meyers, a domestic, informed him what was wanted, when he started back across the street in a diagonal direction to join his sister, but stopped at the curb of the sidewalk until an east bound car passed, and then started on at a fast walk, and after he had gone about twenty or twenty-five feet more, he was struck by a west bound car, at a point seventy feet from the door of his mother's residence, thrown under it, and fatally injured, his body being found under the center of the car.  Evidence adduced by the plaintiff tended to show that this car was some distance east of where the accident occurred, at the time the boy left the sidewalk and started across the street the last time. After he was struck by the train of cars, he was dragged about sixty feet to the point where the train was stopped.

The train that caused the injury, consisting of a trailer and a grip car, stopped to let off a lady and child where Francis street intersects Easton avenue, the front of the grip car being at that time about fifty feet from where the accident occurred.

Plaintiff's evidence also tended to show that when the train left this point that it started up slowly, and when at a point about thirty-five feet from the point of the accident the gripman was looking north and kept looking in that direction.  That about this point a boy named O'Brien jumped on the grip from the north side.  That the gripman gave no alarm; the bell only being rung at Francis street, when two taps were given.  That O'Brien jumped on the foot rail of the grip, about the third seat from the front facing west, turned round quickly, and walked back about six feet and jumped off, when he immediately heard a commotion and a hollowing.  That the grip car went on its way with the boy under it, when the evidence

showed that it could have been stopped in twenty-five or thirty feet. The gripman testified that the car came to a stop about the center of a fence, which is sixty feet distant from the point of collision. No warning was given at the time the boy was struck. That there was nothing to prevent the gripman from seeing the boy had he been looking in the right direction.

The evidence upon the part of defendant tended to show that as the train going west was approaching the point of the accident one or two east-bound trains passed on the south track, and behind the east-bound train was a coal wagon with a large bed on it, and as the west-bound car was within four or five feet of the hind end of the coal wagon the deceased suddenly ran from behind the wagon against the south front corner of the cable car, which extended about seven inches outside of the rail. That at the moment the boy appeared in sight, the gripman saw him and threw his grip to release the cable instantly, and put on both brakes of the grip car as quickly and hard as possible, to stop the car, and did stop it within twelve or fifteen feet; that the gripman as he left Francis street was looking west down the street, paying attention to his duties, and stopped the train before the grip car ran over the boy. That the gripman had no time to ring any bell, that to have done so he would have had to reach up with one hand and catch hold of the bell cord to ring it, and there was no time for that. That instead of that he let go the cable rope and jumped for the brakes and applied them as hard as he could. That if he had taken time to ring the bell, he would have run clear over the boy. That there was nothing that the gripman could have done, except what he did. That he had rung his bell as he approached Francis street, and it could be heard at Grand avenue.

There was some evidence tending to show that

just at the time of the accident there was a car going east, and when it passed, deceased ran from behind it and into the front end of the car coming west, and that the gripman could not see the boy on account of the car going east. But if there was anything to prevent the gripman from seeing the boy when approaching the track it was an ice wagon, and plaintiff's evidence tended to show there was none there.

At the close of plaintiff's evidence, and again at the close of all the evidence, the court refused to give for defendant an instruction in the nature of a demurrer to the evidence, and submitted the case to the jury on the following instructions:

### Plaintiff's Instructions.

"1. The court instructs the jury that if they find from the evidence that on the 13th day of May, 1893, the defendant corporation was operating a cable railway, running for a part of its course along Easton avenue between Francis street and Grand avenue of the city of St. Louis, and if you further find that on the said day the infant son of plaintiff, age six years, was on foot, crossing said Easton avenue and the tracks of the defendant at said place and approaching a train of cars moving thereon and that he was at the time of and just preceding the injury in the exercise of such care and caution as a person of his age, discretion and experience would naturally and ordinarily use under similar circumstances, and if you find that the servants or agents of the defendant in charge of and operating said train of cars on its road at said time and place, failed to sound a gong or warning signal, and if you find that the failure, if any, to sound such signal was negligence, and if you further find that the servants and agents in charge of said train failed

to keep a proper lookout for said infant, while he was approaching its train on said tracks, if you find that he was so approaching, and that such failure, if any, to keep a proper lookout was negligence, and if you further find from the evidence that in consequence of such failure, if any, to sound a warning signal, if any, to keep a proper lookout for said infant while he was approaching the track on which its train was moving, the plaintiff's son was struck by its said train, and by it run over and upon his body, sustaining such injuries to his person, that, as a direct result thereof, he died within a short time thereafter, then you will find a verdict for the plaintiff.

"2.    The court instructs the jury that notwithstanding you may believe that the plaintiff's infant son negligently placed himself in a dangerous situation, if such position was one of danger, and was negligent in not observing the approaching train, yet if you further believe from the evidence that the defendant's servants operating the approaching train saw plaintiff's son was in a dangerous situation, or by the exercise of ordinary care on their part, might have discovered his situation, and that the same was dangerous, in time to have averted the injury by using ordinary care, then your verdict should be for the plaintiff, and in making up your verdict as to the care and diligence to be exercised by the defendant's servants in the premises, you may take into consideration all the facts and circumstances in evidence connected with the case.

"3.    The court instructs the jury that if they find the issues for the plaintiff, they will assess her damages at the sum of five thousand dollars."

## *Defendant's Instructions.*

"1. The court instructs the jury that in considering this case and whether the gripman was negligent or not, you must not indulge in mere imaginings or conjectures as to what may or may not have occurred, or what might or might not have been done on the occasion of the accident, but you must decide this case and find your verdict according to the facts of this case as detailed by the witnesses and the instructions of the court. And the court further instructs you that you are the sole judges of the credibility of the witnesses and the weight to be given to their testimony, and in considering their credibility, and the weight to be given to their testimony, you should take into consideration not only the testimony of the witnesses and their manner of testifying, but also any bias or prejudice, if any was shown, of any witness in favor of or against either party to the suit, their interest, if any, in the result of the suit, and the opportunities of the witnesses at the time of the occurrence to see and know what was done and how to correctly relate the same, and all the facts and circumstances as detailed by the witnesses.

"2. The court instructs the jury that there is no liability whatever on the part of the railway company, and there is no presumption of negligence on the part of the gripman, and the jury must not presume any, from the mere fact that the car struck the child and it was run over by it and killed.

"3. The court instructs the jury that there is no allegation or complaint in plaintiff's petition that the grip car was not fully or properly equipped, or that the train was being run at too rapid or negligent rate of speed before the accident, and when the child came

in view of the gripman, and therefore those matters should not be considered by the jury at all.

"4.   The court instructs the jury that while the child, Harry Baird, was not required to use greater care and caution than children of his age and experience would ordinarily use under the same circumstances, nevertheless, he was required to use such care and caution, and if you further believe from the evidence, that in going or running towards the track, as he did on this occasion, he was negligent, and thereby caused his being struck by the car, then your verdict must be for the defendant."

Of *its own motion the court* gave the following instructions:

"1.   The jury are instructed that the care and foresight required of a child is not the same as that which is required of a grown person, and that in case of a child, it is required to act with such care and prudence as can reasonably be expected of one of its age and experience under similar circumstances, and when it manifests as much care and prudence as can ordinarily and reasonably be expected from it, under such circumstances, the child is not guilty of negligence. And if the jury find from the evidence that the deceased was of the age of six years, and did not possess the discretion of adult or grown person, at the time of the injury, then the jury should consider these facts in determining whether or not plaintiff's child, Harry (the deceased), was guilty of negligence at the time of said injury, that contributed to cause the injury.

"2.   What constitutes 'ordinary care' as mentioned in these instructions, depends on the facts of each particular case.   It is such care as a person of ordinary prudence would exercise (according to the usual and general experience of mankind) in the same situation and circumstances as those of the person or

persons in this case with reference to whom the term 'ordinary care' is used in these instructions. The omission of such care is negligence in the sense in which the word is used in these instructions.

"3. The court instructs the jury that the plaintiff in her petition does not charge the defendant, or its servants in charge of the train, with any negligence whatever, until after the child Harry was approaching the railway tracks and in great danger, and the only negligence charged is that, when the child, Harry Baird, was going into a position of danger and in peril, the gong was not sounded, and that while he was approaching said track, after the boy was in such peril, the gripman failed to keep a proper lookout for persons on or approaching the tracks and to stop the train in time to avoid injury to him; and the court instructs you that before the plaintiff can recover a verdict in this case, and the jury can find in her favor, she must prove to you by a preponderance of testimony that the gripman had time to ring the bell and that the gripman had time and space after he saw the child was in danger or by the exercise of ordinary care might have seen that the child was in danger, to have stopped the train and have avoided injuring him, and if she has not done so to your satisfaction, then your verdict must be for the defendant.

"4. The court instructs the jury that to entitle plaintiff to recover in this case, it must appear from the evidence that the injury complained of was occasioned by the want of attention and negligence of the defendant or its servants, and was not simply the result of accident, and if you believe from the evidence that the injury complained of resulted from an accident which could not have been foreseen or guarded against, by the exercise of ordinary care, on the part

of the defendant or its servants, then the plaintiff can not recover and you will find for the defendant."

The court *refused* to give to the jury the following instructions asked by *defendant.*

"5.    The court instructs the jury that under the pleadings and evidence in this case, their verdict must be for the defendant."

"6.    The court instructs the jury that the plaintiff in her petition does not charge the defendant, or its servants in charge of the train, with any negligence, whatever, until after the child, Harry, was on or near the railway tracks and in danger, and the only negligence charged is that, when the child, Harry Baird, was going into and in a position of danger and in peril, the gong was not sounded, and that after the boy was in such peril, the gripman failed to stop the train in time to avoid injury to him; and the court instructs you that before the plaintiff can recover a verdict in this case, and the jury can find in her favor, she must prove to you by a preponderance of testimony that the gripman had time to ring the bell, and that the ringing of the bell would have stopped the child, and that the gripman had time and space after he saw the child was in danger, and he could see it, to stop the car before running upon him.    If she has not done so to your satisfaction, then your verdict must be for the defendant.

"7.    The court instructs the jury that accidents happen in which persons, particularly children, are injured or killed, which are not the result of any person's negligence, and if the jury believe from the evidence that the occurrence in question, in this suit, was such mere accident or misadventure, then your verdict must be for the defendant.

"8.    The court instructs the jury that if you believe from the evidence that the gripman had rung the bell

at Francis street, or approaching it, then he was not required to ring it after leaving Francis street and keep on ringing it, and if you further believe that there was a wagon passing eastward on or about the south track, and the gripman was looking ahead of him, attending to his duty, and that this child came walking or running from behind the wagon, and that the gripman saw him as soon as he could, using ordinary care, after he appeared from behind the wagon, and he at once tried his best to stop the car and did stop it as soon as he could, then your verdict must be for the defendant, and it makes no difference how far the car ran while he was trying to stop it.

"9.   The court instructs the jury that the gripman was not required to stop or slow up as he was passing the wagon.   If you believe that immediately before the accident the wagon was passing on the south side of the cars, and if you further believe from the evidence, that as the grip car was about passing the wagon, the child, Harry, came out towards the track, and on to it, and that the gripman then tried to stop the car as quickly and promptly as he could, and did stop it as quickly as he could, then your verdict must be for the defendant, and it matters not at all how far the car ran after the gripman attempted to stop it.

"10.   The court instructs the jury that if you believe from the evidence that immediately before the accident a train or coal wagon was going east, south of the track of the west-going train, then the court instructs you that the gripman was not required to slow up as he was passing such train or coal wagon, merely because he was passing either of them, and the court further instructs you that you must not consider the gripman in any wise negligent, because he did not see the child while it was on the pavement or leaving it.   And the court further instructs you that the only

complaints and allegations of negligence in the petition are that the gripman did not ring the gong after the child was in peril on the track or going on, and after the child was in such peril he did not see it and stop the train and avoid injuring it. And the court further instructs you that if you believe from the evidence that the child ran from behind the train or wagon going east, and that the gripman was at the time looking ahead of him attending to his duties, and that as the child appeared from behind the other train or coal wagon, the gripman saw the child and immediately tried to stop the car, and did his best to stop it and avoid striking the child, and you further believe that after the child was in peril of the car, if the gripman had taken time to ring the bell it would have delayed his trying to stop the car, and in not ringing the bell, he acted as a person of ordinary prudence and caution would, under the same circumstances, then your verdict must be for the defendant.''

The first point presented for consideration on this appeal is with respect to the action of the court in refusing defendant's instructions in the nature of a demurrer to the evidence, prayed for at the close of plaintiff's case, and also at the close of the whole case.

It is first claimed by defendant that plaintiff's right of recovery rests solely upon the cause of action, if any, granted under section 4425, Revised Statutes 1889, and that, as this section only gives a right of action to the mother when the father of a minor child is dead, and the minor unmarried at the time of his death, in order to state a cause of action the petition must allege that the minor died unmarried, and that as it fails to so state in this case it states no cause of action.

That this position is correct unless it "appears from the petition that the deceased was of such tender years

as to justify the inference that he was unmarried and childless at his death," is we think indisputable, but in this case the petition alleges that deceased was six years of age at the time of his death, and was of course incapable of entering into a contract of marriage, and "in view of the code rules requiring a liberal construction of pleadings (R. S. 1889, sec. 2074), and directing courts to consider substance rather than form (R. S. 1889, sec. 2117)," it must be held to have been sufficiently alleged that the deceased was unmarried. *McIntosh v. Railroad*, 103 Mo. 131; *Czezcwzka v. Railroad*, 121 Mo. 201.

It is further insisted that "there was no evidence on the part of plaintiff that the gripman was failing to keep a proper lookout for persons approaching its tracks," or that the gripman "by the exercise of reasonable diligence could have discovered the peril in which the plaintiff's said minor son was placed on or near the tracks of the defendant in time to have avoided injury, and that he negligently and carelessly failed to stop said train, after such peril was or could by the exercise of reasonable care have been seen by him, and thus have avoided the injury to said minor." "Or that there was any negligence on his part" in failing to sound a gong or warning signal that is required by proper and prudent management and as is customary when persons are in close proximity to its tracks.

If as plaintiff's testimony tended to show there was nothing to obstruct the view of the gripman who had control of the movement of the cars at the time of the accident, and he saw or might have seen by the exercise of due diligence the perilous position of deceased in time to have checked the speed of the cars and thereby have avoided the injury, and failed to do so, then he was remiss in his duties, and there was evidence tending to sustain this theory of the case.

Indeed there was evidence tending to show that at the time of the collision the gripman was looking northward, and not in the direction that the cars were moving and that no signals whatever were given.

It was the duty of defendant's employees in charge of the cars to keep a lookout along its track where persons were likely to be found, and if the motorman might, by having his attention on the street in front of the cars, have discovered, in time to stop the car, that the child was about to cross the track, or if after discovering his danger he failed to give the usual signals to warn him of the cars' approach, he was guilty of negligence.

There was, however, evidence tending to show that the gripman was attending to his duties, and that he could not see the deceased because of there being between them an ice wagon, with a bed on it from behind which the boy ran, immediately in front of the moving car, and that it was without the fault of the gripman that he was run over and killed.

Before a court is authorized to sustain a demurrer to the evidence because of its insufficiency it must appear that, admitting all the evidence introduced by plaintiff to be absolutely true, and giving him the benefit of every reasonable inference to be deduced therefrom, he is not entitled to recover. In applying this rule to the facts proven by plaintiff it must be remembered that "negligence is not a fact which is the subject of direct proof, but an inference from facts put in evidence. . . . Now negligence may be disputed when the facts are undisputed; and the question in such case, when the dispute is real and serious, is eminently one for the jury under the direction of the court." Wharton, Negligence, sec. 420. "Whether the facts are disputed or undisputed, if different minds might honestly draw different conclusions from them, the case should

properly be left to the jury, and that, in order to with-draw such a case from the jury, the facts should not only be undisputed, but the inferences, in respect of the defendant's failure of duty which arises from these facts, should be indisputable.'' 2 Thompson Trials, sec. 1663. Governed by these rules no error was committed in refusing the instruction in the nature of a demurrer at the close of plaintiff's evidence, nor in refusing a similar instruction, at the close of all the evidence.

The facts in evidence tending to show negligence on the part of defendant and also on the part of deceased, if one of his age, intelligence, discretion and experience could be guilty of negligence under such circumstances, were in much conflict and such that reasonable men might differ with respect thereto, and when such is the case the question of negligence is always for the consideration of the jury. *Gratiot v. Railroad*, 116 Mo. 450; *Tabler v. Railroad*, 93 Mo. 79; *Norton v. Ittner*, 56 Mo. 357; *Huhn v. Railroad*, 92 Mo. 440; *Mauerman v. Siemerts*, 71 Mo. 101; *Nagel v. Railroad*, 75 Mo. 653; *Keim v. Railroad*, 90 Mo. 314; *Lamb v. Railroad*, 147 Mo. ——.

The next ground of contention is that the court erred in giving plaintiffs instruction numbered 1. The first objection urged against this instruction is that there was no evidence to support it, but this question has already been ruled adversely to this contention.

Another objection, however, is that it is too broad and not authorized by the allegations in the petition, but this we think a misconception of that pleading. While the instruction is not couched in the exact language used in the petition, it is substantially so, and is no enlargement thereon. Beside, when this instruction is considered in connection with the third given by the court of its own motion, it can not be said to be

erroneous.  Taking the two together they are we think free from substantial objection.

The second instruction given on the part of plaintiff was not without evidence to authorize it, and the objection urged against it is without merit.

The same may be said with respect to the third and fourth instructions given by the court of its own motion.

By the instructions that were given every feature of the case presented by the pleadings was submitted to the jury, and there was no error in refusing other instructions asked by defendant embracing the same proposition.

Finding no reversible error in the record we affirm the judgment.  GANTT, P. J., and SHERWOOD, J., concur.