## THOMAS BELLAMY et ux., Respondents, v. H. J. WHITSELL, Appellant.

### Kansas City Court of Appeals, March 4, 1907.

1. **PARENT AND CHILD: Master and Servant: Child's Death: Action: Transmittal.** Where the parents sue for damages for the death of their infant son, their action is not based on the loss of services but is based on the action which the child himself would have had, had he survived the injury and which the statute on his death expressly transmitted to the parents.   [Cases considered.]

2. ———: **Child's Death: Defendant's Knowledge: Petition.** An averment in a petition to recover damages for the negligent killing of a minor son by means of an unruly team, that the defendant negligently furnished the son the team, sufficiently avers knowledge of the character of the team.

3. ———: ———: **Marriage: Age: Common Law: Statute.** The common law fixed the age of consent to the contract of marriage at fourteen in males and twelve in females though there might be imperfect marriages after seven years of age subject to affirmation after the above ages. The Missouri statute requires the contract consented to by parties capable in law of consenting. Where a petition by the parents to recover for the negligent death of their minor son alleges he was thirteen years old the presumption is that he was sing'e and unmarried.

4. ———: ———: **Evidence: Child's Habits: Motive.** In an action for the death of a minor child, after plaintiff's prima facie case the defendant showed without objection some undutiful acts of the deceased as going to the value of his services. *Held,* the plaintiff could not in rebuttal show the motive of the mother in scolding the child at the time of the alleged undutiful acts since a witness cannot state the motive of another person.

5. ———: ———: **Instructions: Risk.** Certain instructions are reviewed and held to have been properly given and it is further held that the risk incident to a vicious team was not one incident to the business deceased was employed for.

Appeal from Barton Circuit Court.—*Hon. H. C. Timmonds*, Judge.

AFFIRMED.

*Cole, Burnett & Moore* for appellant.

(1) This action is for loss of services, and therefore it is necessary that there should be an averment that the boy was the servant of the parents and that they were deprived of his services. We respectfully insist that the petition is absolutely barren of any allegation from which these essentials may even be inferred. Scamell v. Transit Co., 103 Mo. App. 511; Dunn v. Railroad, 21 Mo. App. 203. (2) Again, the petition is fatally defective in not alleging that the master knew, or by the exercise of ordinary care might have known, of the alleged vicious disposition of the animals. McCready v. Stepp, 104 Mo. App. 340; Beckett v. Beckett, 48 Mo. 396; O'Neill v. Blase, 94 Mo. App. 655; 2 Cyc. 368 and 383; Current v. Railroad, 86 Mo. 66; Mueller v. Shoe Co., 109 Mo. App. 517; Wojtylak v. Coal Co., 188 Mo. 260. (3) Again, if this petition is based upon the statute, it is fatally defective in not averring that the son was unmarried and left no child or children. Barker v. Railroad, 91 Mo. 94; Dulaney v. Railroad, 21 Mo. App. 599; Sparks v. Railroad, 31 Mo. App. 111; Cutshall v. McGowan, 98 Mo. App. 705; Lilly v. Menke, 126 Mo. 212; Munchow v. Munchow, 96 Mo. App. 556; Jackson v. Min. Co., 106 Mo. App. 445; Case v. Cordell Co., 103 Mo. App. 479; Barron v. Mo. L. & Z. Co., 172 Mo. 233; Packard v. Railroad, 181 Mo. 427; Czezewzka v. Railroad, 121 Mo. 212; Baird v. Railroad, 146 Mo. 280. (4) The jury should have been instructed to find for defendant. This injury might have been caused in various ways, some negligent, some purely accidental. Smart v. Kansas City, 91 Mo. App. 592; Schureman v. Railroad, 88 Mo. App. 185; Spiro v. Transit Co., 102 Mo. App. 261; Young v. Railroad, 88 S. W. 768; Rickaly v. Boiler Works Co., 108 Mo. App. 138; Breen v. Cooperage Co., 50 Mo. App. 212; Fuchs v. St. Louis, 167 Mo. 635.

*VanPool & Martin* and *Scott & Bowker* for respondent.

(1) After verdict every matter that can be inferred from the allegations of a petition will be taken to uphold the petition. Todd v. Hulin, 72 Mo. App. 565. (2) Under our practice act the court should liberally construe all pleadings. Revised Statutes 1899, secs. 659, 672. (3) If the petition is defective it is good after verdict. Revised Statutes 1899, secs. 659, 672. (4) The allegation in the respondents' petition that appellant was guilty of negligence in furnishing respondents' son with a wild runaway and unsafe team was equivalent to saying that appellant knew the dangerous character of said team. Johnson v. Railroad, 96 Mo. 340; Crane v. Railroad, 87 Mo. 588. (5) It was not necessary to allege in respondents' petition that the deceased was the servant of the respondents; the cause of action is a statutory action and based solely upon the statute. Hennessy v. Brewing Co., 145 Mo. 104; Revised Statutes 1899, secs. 2864, 2865. (6) The allegation in the plaintiff's petition that their son was a minor of thirteen years of age was a sufficient allegation from which to draw the inference that he was single and unmarried. Baird v. Railroad, 146 Mo. 265; Czezewzka v. Railroad, 121 Mo. 201; McIntosh v. Railroad, 103 Mo. 131. (7) At the common law an infant could not even make a marriage contract until they arrived at the age of puberty which was fourteen in the males and twelve in the females. This has not been changed by our statutes. 16 Am. and Eng. Ency. of Law (2 Ed.), 263. (8) Under our statute marriage is a civil contract and the parties must be capable of contracting. Revised Statutes 1899, sec. 4311.

JOHNSON, J.—This is a statutory action by the plaintiffs as the father and mother of Leo Bellamy, their minor son, for damages for his death, alleged to have

been the result of negligence of defendant. The judgment was for the plaintiffs and defendant appealed.

As it is contended earnestly that the petition does not state a cause of action, we incorporate enough in the opinion for a proper understanding of the question. After alleging the employment by defendant of said Leo, their minor son, aged thirteen years, as a farm hand, the petition alleges: "That while in the employ of said defendant as aforesaid on the 16th day of September, 1903, while driving a bull-rake, for said defendant on his said hay farm, their son was killed. . . . That owing to the tender age and small size of plaintiffs' said son and the character of the work in handling said bull-rake, the defendant was guilty of negligence in placing one of his age and size in such employment. That owing to his tender age and small size and character of employment, the same was extra-hazardous and dangerous. That defendant was guilty of negligence in furnishing their said son with an unsafe, wild and frac-* tious and runaway team to drive said bull-rake. That by reason of the aforesaid negligence of defendant, on the 16th day of September, 1903, plaintiffs' said son, while in the employment of defendant in driving said team to said bull-rake in said defendant's hay field, said team ran away, tipped over said rake and threw plaintiff's son in front of said rake to the ground and thereby caused his death. That the sole cause of said death of plaintiffs' son, was the aforesaid negligence of said defendant." There are other grounds alleged for recovery, but as the case was submitted upon those quoted it is not necessary that they should be noticed.

The plaintiffs were allowed to introduce their evidence without any suggestion to the court that the petition did not state a cause of action, but at the close of plaintiff's testimony defendant interposed a demurrer, and at the close of the case after all the testimony had

been introduced, he again interposed a demurrer, on the ground that under the pleadings and evidence plaintiffs were not entitled to recover. These demurrers were overruled.

It is urged as a reason why the petition does not state a cause of action, that there is no averment that the son was the servant of the parents and that they were deprived of his services, it being a necessary allegation, as the action is for loss of services. It had been held: "The right of a parent to the earnings of minor child during its minority originates not by virtue of the relationship of parent and child, but from the relationship of master and servant; it is therefore an essential averment, in an action by a parent to recover the loss of the earnings of a minor child, that the child was the servant of the parent who has been deprived of its services." [Scamell v. Transit Co., 103 Mo. App. 504; Dunn v. Railway, 21 Mo. App. 188; Matthews v. Railway, 26 Mo. App. 75; Schmitz v. Railway, 46 Mo. App. 380.] And so this court held in Hennessy v. Bavarian Brewing Co., 63 Mo. App. l. c. 116. But afterwards the case was appealed to the Supreme Court where it is held that the father and mother of the child in such cases do not recover *ex contractu* or in assumpsit, "but in tort on the right which the child would have had if he had survived the injury, and which right died with the injured party at common law, but has been by our statute *expressly* transmitted to them, *eo nomine*. No new right of action is given by our statute. It is solely a preserved, transmitted right." [Hennessy v. Bavarian Brewing Co., 145 Mo. 104.] The court in support of the ruling cited Proctor v. Railroad, 64 Mo. 112; White v. Maxey, 64 Mo. 552; Elliott v. Railroad, 67 Mo. 272; Gray v. McDonald, 104 Mo. l. c. 311; Miller v. Railroad, 109 Mo. 350. The St. Louis Court of Appeals in Scamell v. Transit Co., it seems, overlooked the decision in Hennessy v. Bavarian Brewing Co., supra.

The petition is claimed to be fatally defective in not alleging that the defendant knew that the team was wild and vicious, or by the exercise of ordinary care should have so known. "An allegation that defendant negligently furnished plaintiff an appliance which was not safe or sound, is an equivalent averment and is sufficient." [Johnson v. Railway, 96 Mo. 340; Crane v. Railway, 87 Mo. 588.]

Another point made is that the petition fails to allege a cause of action for the reason that while it states the deceased minor was thirteen years old at the time of his death it does not state he was unmarried. It was said in Baird v. Railway, 146 Mo. 265, in an action of this character that to state a cause of action the petition must contain an averment that the minor died unmarried "unless it appears from the petition that the deceased was of such tender years as to justify the inference that he was unmarried and childless at his death," and under an allegation that the minor was six years old when he died held that as he was incapable of entering into a contract of marriage and "in view of the code rules requiring a liberal construction of pleadings," the averment of his age presumptively included the fact that he was unmarried, citing McIntosh v. Railroad, 103 Mo. 131; Czezewzka v. Railroad, 121 Mo. 201.

But it is argued by defendant that the declaration in section 4311, Revised Statutes 1899, that "Marriage is considered in law as a civil contract to which the consent of the parties capable in law of contracting is essential," is but a legislative recognition of a common law rule and that at common law while a marriage made between infants under seven years of age was absolutely void, one made between infants over that age was not void. It is pointed out that in the Baird case the minor was only six years old and therefore it is conceded that the court was justified in indulging in the presumption that he was unmarried since he could not have been law-

fully married under the rule of the common law just stated, but it is contended that as a minor could be lawfully married at the age of thirteen no such presumption may be indulged in the present case.

At common law, a marriage to be a binding civil contract, one that would establish an irrevocable status had to be made between a man and a woman capable in law of giving their consent to the marriage. The age of consent in males was fixed at fourteen, in females at twelve years. These were the respective ages at which infants were presumed in law to reach the state of puberty and when they entered that state they were deemed to be qualified to consent to marriage. The rule was borrowed from the civil law and it may be observed is better suited to the people of Italy where it originated than to those reared in colder climates where physical development is not so rapid. For reasons obviously peculiar to English civilization during the age of the common law, marriages were permitted to be made between infants who were over seven years old and under the age of consent. Such marriages, however, though legal, were not binding on the infants because of their incapacity to consent and when both parties reached the age of consent they could ratify the marriage and make it binding from the beginning or either could repudiate it and thereby make it void from the beginning, and the latter end could be accomplished either by or without a judicial decree. It was what has been called an imperfect or inchoate marriage during the period of disability and did not become a perfect irrevocable civil contract until it had the lawful consent of both parties. [1 Bishop on Marriage & Divorce (6 Ed.), sec. 147; 2 Kent's Commentaries, star page 78. Mr. Reeves in his work on Domestic Relations (page 257) in speaking of such imperfect marriages said "I have never heard in this State of any marriage where the persons married had not arrived at the age of discretion. And I think it

probable that such premature marriages would never receive any sanction from our courts. Such a contract I apprehend, is void upon the principle that it is a contract against sound policy and *contra bonos mores."* So we think, and so the Legislature evidently thought when it made the declaration now embodied in section 4311. It did more than to merely adopt by special act a common law rule. It declared in effect that no contract of marriage should be valid unless it be supported by the consent of parties capable in law of making it, that is, by a male over the age of fourteen and a female over the age of twelve years. By manifest implication, it excluded parents and guardians from any right to tie babies together in "imperfect marriages" and if it did not, we would say that a practice so revolting to modern American conceptions concerning the marriage relation would lead us to condemn it as *contra bonos mores.* The presumption will be entertained that the boy was unmarried and it follows that the cause of action should be held to be properly pleaded.

There was evidence that the team was wild and fractious and that defendant had knowledge of the fact, and there was evidence tending to show that by reason of their vicious disposition they ran and threw the deceased to the ground, which resulted in his death. Defendant offered to prove that deceased chewed tobacco and called his mother a liar. The object of such inquiry was to show that the deceased was undutiful and that therefore his services would not be as valuable as if he had been obedient and dutiful. [Brunke v. Telephone Co., 112 Mo. App. 623.] The evidence was not excluded, but on the contrary it was admitted without objection. Afterwards, defendant asked the witness the question, "So she (the mother) scolded him because he called her a liar?" This evidence was objected to and excluded, and properly, as it was immaterial what the mother said. And it was an attempt to get the witness to state

what motive she had in calling him back. It was not competent for witness to state what the motive of another person to have been. The defendant had already obtained the full benefit of the evidence that the deceased was undutiful and chewed tobacco. Objection also was made to the introduction of certain evidence by plaintiffs, but we do not think it was error, as it tended to rebut the charge of contributory negligence.

The court of its motion instructed the jury. These instructions fully and in the most explicit manner covered the whole case, placing the theory of both sides to the jury, except as to the defendant's theory that if the jury found that the boy's death was the result of accident, then the finding would be for the defendant. The court embodied this theory in an instruction asked by defendant.

Defendant, however, offered an instruction, numbered five, as to the burden of proof being upon the plaintiff, and also another to the effect that the law imposed upon the deceased the duty of exercising ordinary care for his own protection. The substance of these two instructions was included in those given by the court on its motion, except the latter recited also that the boy assumed the risk incident to the business, which would of itself have been sufficient cause for its rejection, as the employment of a wild and vicious team of horses was not one of the incidents of the business.

The case was well tried. It is subject to but few criticisms and those of the most technical character. Affirmed. All concur.